City Bank Farmers Trust Company, as Trustee of a Trust under the Last Will and Testament of Angier B. Duke, Deceased, for the Benefit of Anthony Newton Duke, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

City Bank Farmers Trust Company, as Trustee of a Trust under the Last Will and Testament of Angier B. Duke, Deceased, for the Benefit of Angier B. Duke, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 76031, 76046. Promulgated January 4, 1939.

*G. H. Craven, Esq.,* and *Rollin Browne, Esq.,* for the petitioner.
*J. R. Johnston, Esq.,* and *D. Hurd Hudson, Esq.,* for the respondent.

32

OPINION.

DISNEY: The petitioner contends and respondent denies that petitioner, as trustee, was carrying on a trade or business within the meaning of the statute. This question has received our attention many times, and of course it depends largely upon the situation in the particular case being considered. Petitioner urges similarity particularly to *John H. Watson, Jr., et al., Trustees*, 35 B. T. A. 706, while respondent points out especially *George Vanderbilt Trust*, 36 B. T. A. 967. In the former case facts are summarized in the statement that "The estate was large and the petitioners were given wide powers of management, control, sale and reinvestment of the trust corpus", in addition to the statement that the gross income was $762,640.85, all of which, except $56,018.64, was interest on Federal and state obligations, exempt from income tax. Question as to whether the trustees were carrying on a business under section 23 (a) of the Revenue Act of 1932 apparently was not an issue in the case until raised in respondent's brief. We held that commissions allowed by the probate court to the trustees for services performed in the management of the trust estate were expenses incurred in carrying on trade or business. In *George Vanderbilt Trust, supra*, the trustees paid attorneys' fees and claimed deduction under section 23 (a) of the Revenue Act of 1928 as ordinary and necessary expenses incurred in carrying on a trade or business. The only facts appearing were that by the will executors were appointed with power to invest and reinvest the principal, to collect the income, to pay taxes and expenses, and to distribute to beneficiaries, but how these powers were exercised did not appear, except as to the distributions. Taking the view that the trustees may have been mere passive conservators of an investment trust, we held that carrying on a trade or business had not been shown.

Here, the trust instrument confers powers not dissimilar to those involved in *George Vanderbilt Trust, supra*, but we think with some limitations of importance to a decision of the question at hand; for here there is distributed to the trustee for each trust one-fourth of the testator's residuary estate for purposes in effect as follows: To collect and receive the income, revenues and profits, and to pay, apply, and distribute same to and for the support, education, and maintenance of the beneficiary for life and, after his death, per capita for the support, education, and maintenance of his lineal descendants, payments, applications, and distributions during minority to be within the uncontrolled discretion of the trustee. It is specifically provided that the trustee shall have the power "to hold, manage and invest, and from time to time as need be, to re-invest the properties held in said Trust for the benefit and advantage of the beneficiaries thereof in such good

and productive stocks, bonds or mortgages as will produce, if possible, a sure and regular income." Any investments made by the testator may be retained without liability for loss or shrinkage, or the trustee may change the property into other property as it deems best, with power to sell, exchange, etc., and invest the proceeds in any property it thinks best, but the testator charges the trustee "to be more careful as to the security of the funds than as to the acquisition of higher rates of interest, my desire being to have my property prudently and securely managed rather than hazarded in what may promise great gains."

We conclude from the above language that investment and reinvestment, though within the discretion of the trustee, must be limited to "stocks, bonds or mortgages as will produce, if possible, a sure and regular income." In fact, the record is plain that this is what was done. The increase reported by the trustee for the period from February 26, 1926, to December 31, 1929, differs only $55 in the two trusts (one reporting $21,635.44 and the other $21,580.44), indicating that the two trusts were handled almost exactly the same, and the same conclusion is drawn from the fact that there is less than $1,000 difference (out of approximately $963,000) in the amount of income received in the two estates during the time covered by the report and from the fact that there is a difference of only about $8 in the amount of expenses chargeable against principal out of approximately $12,800 of such expenses in each estate, while the expenses chargeable against income in the two estates varied only about $200 out of approximately $29,000 each. It is apparent that these estates were handled by the trustee in a routine manner. Moreover, it is stipulated that the gross income of both trusts, approximately $126,000 in the case of each, was entirely from interest and dividends for the year 1931 and the report filed by the trustee for the period from February 26, 1926, to December 31, 1929, shows that, out of $29,608.74 of expenses chargeable against income, only $1 was expense of anything other than payment of taxes, state or Federal, and $2.50 for notary fees. One dollar was for cost of Federal and state stamps for transfer of 250 rights of Marland Oil Co. In the other estate exactly the same situation is shown. Out of $29,815.82 expense chargeable against income, $1 was spent for Federal stamps on the transfer of 250 rights of Marland Oil Co., $2.50 for notary fees, and the rest was expense of state or Federal taxes. Income tax reports for 1931 ask (in addition to taxes) only $5.50 as to the one trust, and $6.11 as to the other, under the heading of deductions. In other words, those are the amounts of expenses incurred by the two estates in those years which could possibly be classed as expense of business; while reference to the ledgers kept by the two estates reflecting income and expense throughout the year 1931 indicates only a very few dollars of expense, and most of this for small items of a

few cents each for collection charges on coupons. In the estate of Angier B. Duke, Jr., the total expense shown by the ledger for the year (except $30.52 taxed in the surrogate's decree) is $27.95, all of which is shown to be the cost of Federal stamps, mailing bonds, and collection of coupons. The same is true in the trust for Anthony Newton Duke, where we find (except for $30.53 taxed in the surrogate's decree) a total of $28.74, all of which consists of small items of Federal stamps, cost of mailing bonds and coupon collection charges. Moreover, as above seen, the report of the trustees for the period from February 26, 1926, to December 31, 1929, demonstrates only one transaction in each estate—the transfer of 250 rights in Marland Oil Co., and the report for 1931 for one trust shows an income of $126,729.09, and a loss on sale of securities of $872.61 from nine sales of securities, seven of which were purchased in 1926, and two in 1928, with a total sale price of $86,670.38; while the other trust reports an income of $126,460.28, and a loss of $1,295.06 from sale of twelve securities, all but one purchased in 1926, the other in 1928, with a total sale price of $90,430.42. Plainly, securities were being held, not dealt in.

The above facts demonstrate conclusively to us that this is a case of passive investment and not of carrying on a business, for not only is the trustee limited in its investments, but it is cautioned in effect to be a safe investor rather than a participant in trade or business, and, plainly carrying out the testator's injunctions, it conducts no business, because it has, as above seen, no expenses of conducting business other than the collection of coupons and mailing bonds, amounting to a few dollars, and an even more negligible amount for transfer stamps or notary fees. In *George Vanderbilt Trust, supra,* there was no evidence to convince us of business done or trade carried on; here the evidence is pointed and positive that, practically speaking, the only activity of the trust was to watch investments and collect coupons. In *John H. Watson, Jr., et al., Trustees, supra,* the trustees had "wide powers" of management and investment as contrasted with the narrow powers herein, and the present question apparently arose only when brief was filed by respondent. We do not think that case decisive of the issue which arises from the evidence herein. Extensive authority need not be compiled to demonstrate that a mere passive investor, collecting interest and clipping coupons, and making a very few reinvestments, is not engaged in trade or business. *Alice G. Kales,* 34 B. T. A. 1046; *Helen W. Heilbroner,* 34 B. T. A. 1200. That situation here affirmatively appears, as well as the limitations indicated by the trustor, amounting to a direction to trustee to be passive investor rather than to engage in trade or business.

In *Estate of Hetty H. R. Green,* 27 B. T. A. 1195, trustees under a testamentary trust had power to rent, lease, sell, or convey real estate,

to invest and keep invested the proceeds of the property, to change investments, and to manage and control the trust estate and exercise all powers necessary to that end. The income received during one of the taxable years was derived from 75 capital transactions, 71 of which consisted in receiving money paid for redemption of bonds at maturity, and the other 4 comprising sales of 1 lot of stock, 2 mortgages and a parcel of land. Whenever property was acquired it was taken as an investment, never for the speculative purpose of deriving profit from a sale thereof later on. We commented that, with certain exceptions, the net income of a trust shall be computed in the same manner as that of an individual and that petitioner was not engaged in buying and selling real estate and securities with a view to profit on the transaction, that out of 75 capital transactions only 4 were other than reception of money to redeem bonds at maturity, and that they were occasional, isolated transactions, not a business regularly carried on. We further noted that the language employed by the testatrix to safeguard the trusteed property clearly indicated that the purpose was to conserve the estate corpus and to protect it from the hazards of active business enterprise. "The whole tenor of the instrument distinctly negatives any idea that the estate should regularly carry on a business for profit, and the evidence shows, we think, that none was carried on." We therefore concluded and held that net loss deductions were properly disallowed. The very few transactions shown by the record in the instant proceeding are of the same nature as those considered in the cited proceeding and our comment upon the language of the testatrix indicating a purpose to conserve the estate, rather than carry on a business for profit, can be precisely applied to the settlor's language in the trusts here at hand.

We therefore hold that the trustee in the case of each trust here involved was not carrying on any trade or business, and that the expenses, viz., trustee's commissions paid from principal, sought to be deducted as ordinary and necessary expense of carrying on trade or business under section 23 (a) of the Revenue Act of 1928, were properly denied by the respondent. This conclusion makes it unnecessary to pass upon the other question presented as to whether the fact that the commissions in question were charged to corpus of the trust, under the surrogate's order, prevents their classification as business expense.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

VAN FOSSAN and ARNOLD dissent.

MELLOTT, concurring: Although agreeing with the majority, that the petitioners were not engaged in a trade or business, I am of the opinion that, even if they were, the particular commissions in issue are not deductible. They were paid by the petitioners to themselves in 1931 out of trust corpus, and apparently were never considered by them as deductible items until after substantial deficiencies had been determined against them, the correctness of which they now concede. They had been allowed under section 285 of the Surrogate's Court Act of New York on the basis of *principal* received and paid out. They were nonrecurring items, chargeable to and deductible from corpus. If application had been made by them to the Surrogate's Court in 1926, when the corpus was paid over to them, they would have been entitled to have received at least 50 percent of the commissions at that time; *In Re Bushe*, 227 N. Y. 85, for, under the construction by the New York courts of the section under which the allowances were made, they became entitled to that portion of the allowances immediately upon receipt of the property.

In my opinion the commissions in controversy could not be said to be "ordinary and necessary expenses paid * * * in carrying on any trade or business" even if the petitioners were engaged in a trade or business.

SMITH, TURNER, and HARRON concur in the above.

---

LEECH, dissenting: The respondent admittedly allowed deductions of commissions, similar to those now contested, in his determination of the present deficiencies. He asks for no increased deficiencies because of error in that action. But if that was right, it would seem so, only, if the petitioning bank, as trustee of each of the two trusts, was carrying on business during the taxable year. However, respondent disallows the deduction of similar additional commissions which are now in controversy, because, he says, the bank, as such trustee, was not carrying on business. In my judgment, his position is wholly inconsistent. Either the petitioning bank, as trustee for these trusts, was carrying on business during the taxable year, or it was not. If it was, not only those commissions, the deduction of which was allowed by the respondent, are deductible, but the contested additional commissions are likewise deductible. I think the bank, as such trustee, was more than a passive conservator of investments and was carrying on business during the taxable year. The record, to me, clearly establishes that fact. In my opinion, the additional commissions, now in dispute, are deductible as well as those the deduction of which respondent has allowed and is not now contesting.

ARUNDELL and TYSON agree with this dissent.