*108 OPINION.
Hill:
The first issue for consideration is whether or not during the years 1982, 1933, and 1934 petitioner was an association taxable as a corporation.
Section 13 of the Revenue Act of 1932 imposes a tax upon the net income of corporations, and in section 1111 (a) (2) it defines the term “corporation” as including “associations.” Sections 13 and 803 (a) (2) of the Revenue Act of 1934 contain similar provisions.
The term “association”, as used in the taxing acts, means “a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.” Hecht v. Malley, 265 U. S. 144. Again, it has been said that the term “association” implies associates, who enter into a1 joint enterprise for the transaction of business and sharing of its gains. Morrissey v. Commissioner, 296 U. S. 344. Additional characteristics of an “association” are (1) vesting in the trustees of title to the property embarked in the enterprise; (2) designation of the trustees as a continuing body; (3) centralized management; (4) security of the enterprise from termination or interruption by the death of the owners of the beneficial interests; (5) transfer of beneficial interests without affecting the continuity of the enterprise; and (6) limitation of personal liability of the participants. Living Funded Trust of Marry E. Lyman, 36 B. T. A. 161, 167.
Petitioner, during the taxable years, wei think came clearly within the boundary lines defining an “association” as above indicated. The four Marshall heirs, who were then the owners, as tenants in common, of the Marshall land, associated themselves together in a joint enterprise for the transaction of business and sharing of its gains. They transferred to the trustee, its successors and assigns, the property in which each owned an undivided interest, and thereby secured centralized management for their common benefit. Subject only to the right of revocation by a majority in interest of the grantors, the trust wag to continue during the life of the longest living of the *109 grantors, but not beyond April 30, 1968. Thus, the trust was a “continuing body” and not subject to termination or interruption by the death of the beneficial owners. Likewise the continuity of the enterprise would not have been affected by the transfer of beneficial interests. And, lastly, it appears that under the law of Pennsylvania the liability of , the beneficiaries was probably limited to the property in the.hands of the trustee, even though there was no such specific provision in the trust instrument. Cf. Hartley v. Phillips, 198 Pa. 9; 47 Atl. 929. However, an extended discussion of this point is not deemed necessary, since in our opinion decision of the question presented does not turn upon whether or not there was in fact limitation of personal liability.
In the instant proceeding, as in most cases involving similar questions, there may be present some of the elements both of a trust and an association, but the essence of the issue is whether the paramount purpose of the present trust was the carrying on of a business enterprise for profit and was therefore a business trust or an association as distinguished from what is termed a pure trust. Cf. Frederick Pitzman et al., Trustees, 36 B. T. A. 81, 92. In the case of a pure trust the earning of income is merely incidental. The main purpose of an association, whether or not it be called a trust, is the earning of profits from the operation of a business venture for the benefit of the joint owners. As pointed out by the Supreme Court in the Morrissey case, supra:
In what are called “business trusts” the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties * * *
Clearly, the purpose of the present trust was not liquidation, nor was its main purpose the holding and conserving of property. While the trustee was given authority to sell the property, with the consent of a majority in interest of the beneficiaries, the evidence discloses no intention to liquidate during the existence of the trust, and so far as shown no effort was made in that direction. Prior to November 30,1925, the four Marshall heirs were the sole stockholders of the Marshall Land Co., a business corporation which held title to the Marshall land. On that date the heirs caused the corporation to transfer to them the title to the land, and on the same date they transferred the title to the trustee, and the corporation was dissolved. The principal purpose of dissolving the corporation was to avoid corporation taxes. Apparently, the trustee thereafter merely carried *110 on. the prior functions of the corporation in the management and operation of the property and in holding the title thereto.
Obviously, the Marshall land was very valuable property. Prior to default of the tenant in 1982, rental was paid at the rate of $38,000 per annum. The trustee was vested with broad powers, essential to the carrying on of a business for profit. Among other things, the trustee was empowered to hold, manage, and control the property; to lease and rent the premises or any part thereof; to collect, receive, sue for, and recover the rents and profits; to oversee the payment of taxes, municipal assessments, insurance, and interest on mortgages; to make payments on account of the principal of any mortgage, under certain conditions; to contract for the repair and general upkeep of the premises, and to incur reasonable and necessary indebtedness incident to the management thereof; to sell at public or private sale the whole or any part or parts of the property and to make and deliver deeds therefor, with the consent of the majority in interest of the beneficiaries; to borrow money for many purposes, including the construction of a building on the premises or to pay for alterations and improvements, with the approval in writing of a majority in interest of the beneficiaries.
The Marshall land was more valuable as a unit for the purpose of selling or renting, and the heirs were not competent, by reason of the lack of business experience, to manage and operate or sell the property themselves. But that the management and operation of such a property, under the extensive powers vested in the trustee, constituted the carrying on of a business enterprise for profit is too clear, we think, to require further discussion.
Petitioner points to the fact that the tenant paid the taxes, insurance, and other expenses, and contends that during the taxable years the trustee did little more than collect the rent and distribute it among the beneficiaries. This is not the decisive factor; it is the powers conferred upon the trustee in the trust instrument which determine the character of the trust rather than the particular activities engaged in during the tax years. Otherwise it is apparent that the same organization might be classed in one year as a trust and in another as an association taxable as a corporation. See Morrissey v. Commissioner, supra, p. 361; Sloan v. Commissioner, 63 Fed. (2d) 666, 669; Commissioner v. Vandegrift Realty & Investment Co., 82 Fed. (2d) 387, 390.
Petitioner cites the decision of the Supreme Court in Lewis & Co. v. Commissioner, 301 U. S. 385, and contends it is decisive of the case at bar. We can not agree. The facts of the cited case are materially unlike those of the present proceeding. In the Lewis case, the Court held that, while there were two beneficiaries, one of them was the single grantor and the other, in substance, a mere agent of the *111 grantor and that, hence, there was no association within the meaning of the statute because there were no associates in carrying out the purposes of the trust. Furthermore, there were no factors making the trust analogous to a corporate organization. The grantor conveyed certain real estate to the trustee to hold for the benefit of herself and an exclusive sales agent and manager of the trust, concurrently appointed. The powers and duties of the trustee were purely ministerial. In order to facilitate the subdivision and sale of the realty, the trustee held the title, executed conveyances upon the agent’s direction, and collected and disbursed other than the initial payments. In its opinion the Court said:
If it were not for tlie declaration of trust, we should have here the simple ease of an appointment by a land owner of an agent to subdivide the land and sell it, receiving as compensation for his services a fixed percentage of the payments made by the purchasers. It is quite evident that such an arrangement has no element of substance or method which would warrant its designation as an association under the statutory provision in question. Nor can we see that the intervention of a trustee to hold title, execute contracts and conveyances at the direction of the real estate agent and make collections alters the situation.
*******
The duties of the trustee were purely ministerial, with no power to control, direct, or participate in, the conduct of the selling enterprise contemplated by the contract.
On tbe first issue, respondent’s determination is approved.
Tbe second question at issue is wbetber or not assessment and collection of any tax due from petitioner for the years 1932 and 1933 are barred by limitations.
Section 275 of tbe Kevenue Act of 1932 provides in part pertinent here as follows:
(a) General Rule — The amount of income taxes imposed by this title shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
* * * * * * *
(c) Corporation and Shabeholdei!. — If a corporation makes no return of the tax imposed by this title, but each of the shareholders includes in his return his distributive share of the net income of the corporation, then the tax of the corporation shall be assessed within four years after the last date on which any such shareholder’s return was filed.
Tbe period specified in subdivision (a) under tbe general rule begins to run from tbe date the return was filed, whereas tbe provisions of subdivision (c) are applicable only in a case where the corporation made no return of the tax imposed by tbe income tax title. Petitioner filed a fiduciary return on form 1041 for the taxable year 1932 on March 15, 1933, and a similar return on tbe same form on March 15,1934, for tbe year 1933. Tbe beneficiaries included their *112 distributive shares of the net income for each year in their respective individual returns and paid the taxes due thereon. The last date on which any such beneficiary’s return was filed for 1932 was March 15,1933. Respondent made no adjustment to the net income reported on the fiduciary returns, but computed the deficiencies on the basis of the income so reported. Thus, it is clear that if the fiduciary’s returns were “the returns” required by the statute, the period of limitations provided in section 275 (a) has run and the deficiency notice was issued too late. If the 1041 returns were not returns of the tax, then it seems equally clear that petitioner has made “no return” within the meaning of section 275 (c), and the period for assessment and collection of the taxes due for 1932 and 1933 had not expired on March 13, 1937, when the deficiency notice was mailed.
This same question was considered by the Board in Roosevelt & Son Investment Fund, 34 B. T. A. 38, on facts similar in all material respects to the instant proceeding, and it was there held that the return on form 1041 was a return under the law and served to start the running of the period of limitations provided in section 275 (a) of the Revenue Act of 1928, which contains the same provisions as section 275 (a) of the 1932 Act. Respondent filed in that case a petition for review to the United States Circuit Court of Appeals for the Second Circuit, and the court dismissed the petition for lack of jurisdiction, holding that a return on form 1041 was an information return, not a return of the tax, and that it was without jurisdiction to review a decision of the Board in any case where a retwrn of the tax, respecting which the liability arises, had not been made to a collector’s office located in its circuit. See 89 Fed. (2d) 706. In discussing the effect of an information return on form 1041, in connection with the question of limitations arising undqr section 275 (c), the court remarked:
The truth is that the information return filed by respondent [taxpayer] was not the return of a tax at all but merely detailed the information with which the tax upon the beneficiaries could be computed. It is immaterial in this respect that such a return has been held to prevent the imposition of a penalty (citing' authorities), or that it contained all the facts by which a computation of the tax could be arrived at. Section 275 (e) is explicit in its reference to the “return of the tax imposed by this title.” That means just what it says and. may not be extended to include an information return which in fact is no tax return at all.
To the same effect, see also United States v. National City Bank of New York, 21 Fed. Supp. 791, 797.
Upon reconsideration of this question, we conclude that subdivision (c) of section 275, supra, provides an exception to the general rule stated in subdivision (a). It follows that the provisions of subdivision (a) have no application to a case coming within the purview oi *113 subdivision (c). We hold, therefore, that assessment and collection of the taxes due from petitioner for the years 1932 and 1933 are not barred by limitations.
Eeviewed by the Board.

Judgment will be entered for the respondent.

Van Fossan dissents.