Tyrrell Williams and Meade Williams, Trustees under Indenture of Trust dated December 22, 1931 v. Commissioner.
Williams v. Commissioner
Docket No. 614.
United States Tax Court
1944 Tax Ct. Memo LEXIS 197; 3 T.C.M. (CCH) 591; T.C.M. (RIA) 44216; June 19, 1944
*197 Peter H. Husch, Esq., 506 Olive St., St. Louis, Mo., for the petitioners. J. E. Marshall, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioners' income tax for the calendar years 1939, 1940, and 1941, in the respective amounts of $1,206.94, $1,222.10, and $2,180.56, and in declared value excess-profits tax for 1941, in the amount of $93.42. The single question at issue is whether petitioners are an association taxable as a corporation under section 3797 (a) (3) of the Internal Revenue Code. The facts hereinafter set out are found from the stipulations of fact and from the oral and documentary evidence introduced at the hearing. Findings of Fact We incorporate herein by reference the stipulation of facts filed by the parties. Fiduciary returns were filed by petitioners for the taxable years with the collector of internal revenue for the first district of Missouri, at St. Louis, Missouri. The petitioners, Tyrrell Williams and his son, Meade Williams, residing in St. Louis, are trustees under an indenture of trust dated December 22, 1931, executed by heirs of Meade C. Williams, father and grandfather, *198 respectively, of petitioners, who died in 1906 leaving the real estate which is the corpus of this trust, together with other substantial holdings of real estate, one-third to his widow, Elizabeth, and two-thirds to his five children, Jesse Lynch Williams, Burton Williams, Susan C. Porter, Tyrrell Williams and David R. Williams. Elizabeth died in 1926, leaving her estate to her five children. One of her sons, Jesse, died in 1929 leaving his undivided interest in the real estate to his widow, Alice L. Williams. In 1931, the four surviving children of Meade and Elizabeth Williams, together with Alice, widow of Jesse, and the respective spouses of those who were married, executed the trust indenture with which we are now concerned, conveying to petitioners their various undivided one-fifth interest in the real property. The real estate so conveyed to the trustees consisted of seven parcels, six of which are business properties situated in Fort Wayne, Indiana, one of which is leased to the S. S. Kresge Co., and one, a farm, in Cuming County, Nebraska. The trust indenture contained the following provisions relating to the purpose of the trust: "WHEREAS all said parties of the first *199 part desire to place the legal title of all said real estate in the names of the parties of the second part as trustees, so that said trustees may have full and complete legal title thereto and authority to manage, sell, assign, convey, transfer, encumber, mortgage, rent, lease or do anything in connection therewith, as to said trustees may seem proper: * * * * *
"The trustees are given as absolute control of the trust estate for the purpose of alienating the same, or any portion thereof, or any interest therein, and making arrangements with others looking to the improvement or enhancement in value of the trust estate, or with a view to further alienation of the whole or any part thereof or any interest therein, as they would have if they owned the estate in their own right, not subject to any trust. * * *" The trustees were specifically given the absolute power to sell, exchange or otherwise alienate, for such consideration and upon such terms as they might deem for the best interests of the estate, and it was provided that "any sale * * * by such trustees * * * shall vest in the grantee * * * named therein a valid and effectual title to the interest or estate conveyed without *200 being in any manner dependent upon the assent of any of the beneficiaries herein named, or their assigns, or upon the proper application by said trustees of the consideration paid therefor." They had power also to borrow money; to collect and receive all sums due as rents or purchase money; to bring or defend suits; to employ agents or employees necessary to the management of the property and the execution of their trust; and, generally, to do any and all things in respect to the handing, management and disposition of the trust property as they judged to be for the best interests of the beneficiaries. They were expressly directed to pay, out of the proceeds of any sale or lease, all taxes, assessments, and other lawful expenses or indebtedness, and to distribute the remainder from time to time, to the beneficiaries, as their respective interests were there set out and defined. The interests of the beneficiaries were evidenced by certificates of beneficial interest, which were assignable, and the rights of the beneficiaries in the trust property were limited to the right to demand payment of the share of the net proceeds to which their interest entitled them. There was no limitation *201 of personal liability. It was declared that the trust was to continue until all of the real estate should have been sold, provided, however, that in case any part of it remained unsold at the expiration of 20 years, the trustees should sell the same at public vendue within ninety days, for cash, after giving public notice by advertising of the time, place, and terms of sale, and, within thirty days after the sale, the trustees should make full settlement with the beneficiaries and terminate the trust. It was also provided that if all the beneficiaries named in the indenture should die before the end of the twenty-year period, the trust should terminate and the assets should be distributed to those entitled to them. The trustees were given power to appoint their successors, with other provision for succession in case of the trustees' failure to exercise such power. The original trustees were required to and did serve without compensation. The property conveyed by this instrument was all the unsold property remaining from the estate which Meade Williams had left upon his death in 1906. Other real estate in Missouri, Michigan, North Dakota, Texas, Iowa, Indiana and California had been *202 sold by his heirs, including the parties to this trust. At the time of the final liquidation of the California property, the surviving children had conveyed their interests therein to their brother, Burton, who resided in California, and who executed a declaration of trust with respect to the property. This procedure greatly facilitated the sale of that property, since the equitable owners lived in widely scattered sections of the country. It was thereafter decided by these individuals that the sale of the remaining properties would be similarly facilitated if the title were vested in one or two individuals, thus avoiding the necessity of extensive correspondence between the various owners, and the possibility of further title complications arising by reason of death of any owner, such as succession by minor heirs, inchoate dower rights, possible demands for partition, or difficulty in contacting any owner. They consulted the attorney who had drafted the deeds and declaration of trust in connection with the sale of the California property, and he advised the adoption of a similar procedure with respect to the Fort Wayne property and Nebraska land, which were the only properties left *203 unsold of the large holdings which they had inherited. They advised him that they had been and were attempting to sell these, and he drafted the trust instrument with the primary purpose of liquidation in mind. An agent was employed to manage the Fort Wayne property, except that which was leased to Kresge, and he was advised at the time of his employment that the properties were for sale. In 1942, two-thirds of one of the Fort Wayne tracts was sold, pursuant to an option contained in a lease executed in 1940, for a price of $6,500, which was arrived at by means of an independent appraisal obtained by the agent at the request of the trustees. The proceeds of this sale, after paying the expenses of the sale, were promptly distributed to the beneficiaries. The trustees in 1942 received an offer of $128,500 for the property in Fort Wayne leased by the Kresge Co., but they were advised and believed this to be substantially below its fair market value, and rejected it. They later received a tentative offer of $150,000 for the property, and, at the time of the hearing, negotiations were pending for the sale of the property pursuant to that offer. No bona fide offers have been received *204 for the other properties in Fort Wayne, nor for the Nebraska farm lands. The trustees were advised in December 1939, both by their agent and by an independent appraiser, employed by their agent at their request, that it would not be advisable to sell the farm at the prevailing prices unless they were willing to sell at a sacrifice. This land was appraised for Federal estate tax, at the time of Elizabeth Williams' death, at $150 per acre, and the trustees have felt they should try to get at least $100 per acre for it. No improvements have been made to any of the properties since the death of Elizabeth Williams, and no additional properties have been purchased by the trustees, either by reinvesting the net proceeds received by them, or otherwise. The net proceeds have at all times been distributed directly to the beneficiaries, as required by the trust instrument. The purpose of the creation of the trust was the liquidation of the property in an orderly way, without sacrificing it. The trust is not an association taxable as a corporation. Opinion KERN, Judge: The only question presented here is whether petitioners are an association taxable as a corporation, within the meaning of *205 section 3797 (a) (3) of the Internal Revenue Code. The general rule is that a trust devoted to the liquidation of real estate or the passive holding of real estate and the collection of income therefrom is not taxable as an association. Mertens' Law of Federal Income Taxation, sections 43.19, 43.22. The petitioners contend that the primary purpose of the trust was to dispose of the real estate devised by Meade C. and Elizabeth Williams to their children, at reasonable prices and for fair values, and to manage the properties for the best interests of the beneficiaries until that was accomplished. The trust was limited to a period of twenty years, and was to terminate earlier upon the sale of the property, or upon the death of the last surviving beneficiary. The trustees were to and did receive no compensation, as such, and had no power to reinvest any money received by them, but all net proceeds were required to be and were distributed direct to the beneficiaries. The trustees maintained no office and the beneficiaries held no meetings. The respondent points to the fact that transferable certificates of beneficial interest were executed by the trustees; and that the properties were *206 never advertised for sale; and argues that the owners of the undivided interests in the land associated themselves together for liquidation purposes. The respondent is especially impressed by the failure of the trust instrument to provide expressly for the liquidation of the estate. The oral evidence offered by the petitioner included testimony of one of the trustees, who testified that the primary purpose of the creation of the trust was the orderly and convenient disposition of the property; of the attorney who drafted the indenture, and who was familiar with the affairs of the Williams estate, who testified that he knew of his own knowledge that it was the desire and purpose of the family to sell the properties remaining both prior to and after the creation of the trust, and that his instructions and intention in the drafting of the papers were to simplify and facilitate such disposition; and of the real estate agent from Fort Wayne, who testified that he was instructed at the time of his employment that the properties were for sale, and that he pursued all inquiries and expressions of interest on the part of prospective buyers, but that he did not list or advertise them because *207 it was his judgment that such a course cheapened the sale value of downtown real estate. The whole course of conduct prior to and after the establishment of the trust lends support to this line of testimony. The trustees did no more than hold and conserve the real estate, pending its sale and distribute the net income to the beneficial owners. They did not buy or sell additional property, nor did they make any substantial improvements to that which they owned. They have sold one piece of property, and were, at the time of this hearing, earnestly engaged in negotiations looking toward the sale of their principal holding in Fort Wayne, the building occupied by Kresge. The facts here seem to sustain the petitioners' position, and we have found that they were not an association taxable as a corporation. The issuance of certificates of beneficial interest has been said not to be the controlling test of the existence of an association. Morrissey v. Commissioner, 296 U.S. 344. The fact that some slight activity of a business character is conducted by the trust is not persuasive, since, as has been said, in Commissioner v. Morriss Realty Co. Trust No. 2, 68 Fed. (2d) 648, *208 "There is scarcely any trust which in its administration, does not necessarily involve the doing of some kind of business." See also Commissioner v. McCormick, 68 Fed. (2d) 653; Commissioner v. Guitar Trust Estate, 72 Fed. (2d) 544; Myers v. Commissioner, 89 Fed. (2d) 86; Helvering v. Washburn, 99 Fed. (2d) 478. The fact that provision was made for the trust to last as long as twenty years does not, in our judgment, impeach the petitioners' contention that their primary purpose was liquidation, in view of the extensive business depression prevailing in 1931, which seriously affected the real estate market. In Broadway-Brompton Buildings Liquidation Trust, 34 B.T.A. 1089, the term of the trust was set at 15 years; in Frederick Pitzman, et al. Trustees, 36 B.T.A. 81, the term of the trust was 10 years, but extensions were provided for, and the trust had actually been in existence for nearly 20 years at the time of trial. In Paine et al. v. United States, 32 Fed. Supp. 672, *209 the term was 15 years; in Myers v. Commissioner, 89 Fed. (2d) 86, the term was 20 years; yet all these were held not to be associations taxable as corporations. The case of United States v. Rayburn, 91 Fed. (2d) 162, relied on by respondent, is fundamentally distinguishable, in that the trust there involved was created by stockholders of a real estate company to succeed the corporation. The purpose of the corporation had undeniably been the carrying on of a real estate business for profit. The only purpose for the creation of the trust to supplant the corporation was to remove doubt as to the validity of the corporation's title under Texas law, and the business to be done by the trust was to deal with the same lands, for profit, which the corporation had owned during its existence. See also, Lee H. Marshall, Heirs, 39 B.T.A. 101, affirmed 111 Fed. (2d) 935; Porter v. Commissioner, 130 Fed. (2d) 276. The crucial question in cases of this kind is whether the primary purpose of the trust is to accomplish a liquidation or to carry *210 on a business enterprise. We think the primary purpose of this trust, as established by the evidence of the witnesses, and substantially supported by the trust indenture, was that of liquidation; its form of organization, though it resulted in some of the advantages secured by a corporate form, is not conclusive in the absence of the primary business purpose; and its activities which were in the nature of business activities, were very limited in extent and were only incidental to the primary purpose of liquidation. We conclude, therefore, that petitioners are not an association taxable as a corporation. Decision will be entered for the petitioners.