HURON RIVER SYNDICATE, WALTER F. HAASS, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100775.   Promulgated July 3, 1941.

*Harry Allen, Esq.*, and *Harry B. Sutter, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

862

OPINION.

OPPER: The primary issue is petitioner's taxability as an association similar to a corporation.[1] Petitioner contends that this record more nearly resembles *Commissioner* v. *Gerstle* (C. C. A., 9th Cir.), 95

---

[1] SEC. 1001. DEFINITIONS. [Revenue Act of 1936.]

(a) When used in this Act—

*      *      *      *      *      *

(2) The term "corporation" includes associations, joint-stock companies, and insurance companies.

*      *      *      *      *      *      *

Fed. (2d) 587, than *Del Mar Addition* v. *Commissioner* (C. C. A., 5th Cir.), 113 Fed. (2d) 410, relied upon by respondent.

Like all proceedings of this nature, the present controversy must be decided upon its individual facts. We think these bring it more nearly within the rule of the *Del Mar* case than of *Commissioner* v. *Gerstle*. Three important distinctions from the latter appear to us to require this outcome: First, in the agreement which these individuals made, it is expressly provided that their interests "are not interests in the property" but are rights to "the distribution of the net profits to be derived therefrom and distribution of any trust property remaining on termination", and that this interest "is personal estate and not real estate"; whereas in the *Gerstle* case, which was held to be a joint venture, "it seems clear that the members were equitable owners of the real property acquired." The latter is, of course, a relationship consistent with a true trust, while the former more nearly resembles the interest of a corporate stockholder. Second, these individuals expressly agreed that if, as was permitted, the enterprise should be transformed into a *de jure* corporation, the duties which petitioner would then perform as director, president, and manager would be "as nearly as may be the duties which he has undertaken hereunder as trustee"; thus indicating that his relationship to the participants in the enterprise was to be as nearly as possible comparable to that of the managing officer of a corporation. No such provision appears in the agreement construed in the *Gerstle* case. Finally, the original purpose of the *Gerstle* syndicates was the purchase and immediate resale of the respective properties and only business reverses were responsible for its modification; while in the present case it was at all times contemplated that the enterprise would engage in subdivision and development, an undertaking similar to that involved in *Del Mar Addition* v. *Commissioner, supra;* so that it is questionable whether the Gerstle ventures were originally intended as the vehicle for carrying on a business. This is a prerequisite to taxability as a corporation, *Chase National Bank of the City of New York, Trustee,* 41 B. T. A. 430, and in fact the Board found that the Gerstle syndicates "were not organized with the idea of remaining in existence for any substantial length of time or of actively operating in business, as is generally the case when corporations are created," and Judge Denman concurred in the *Gerstle* opinion on the express ground that "whatever may be the form of the syndicates, they did not control after the frustration of the plan for immediate resale." For the same reason *Cleveland Trust Co.* v. *Commissioner* (C. C. A., 6th Cir.), 115 Fed. (2d) 481; certiorari denied, 312 U. S. 704, also cited by petitioner, is equally inapplicable. For there "the trust instrument shows no plan to carry on a business in buying, selling, leasing or dealing in real estate."

Of the five salient characteristics of an association taxable as a

corporation, which *Morrissey* v. *Commissioner*, 296 U. S. 344, catalogs, three are readily discernible in this proceeding. Title to the property was taken for the benefit of the enterprise by petitioner and provision was made for succession by a trustee or corporation; management and control were centralized in petitioner; and death of the individual participants would not cause any change in the constitution of the venture. Here, as in *Del Mar Addition* v. *Commissioner*, *supra*, "the fourth feature, the transfer of interests without affecting the continuity of the enterprise, was not expressly provided for, but such transfers actually were made." There were, to be sure, no certificates or other documents evidencing the respective interests. But, as the Supreme Court observed in *Morrissey* v. *Commissioner*, *supra:* "While the faculty of transferring the interests of members without affecting the continuity of the enterprise may be deemed to be characteristic, the test of an association is not to be found in the mere form of evidence of interests or in a particular method of transfer." Finally, while there was no express limitation of liability, absence of this single feature is "insufficient to remove the taxpayer from the corporate class." *Jordan Creek Placers*, 43 B. T. A. 131, 135.

It is in the nature of things improbable that such an issue as the present will ever be free from doubt, or that controversies presenting such sharp and simple facts as to leave no room for uncertainty will often find their way into the field of litigated controversy. But we are of the opinion that in the present case the preponderance of all the facts leans appreciably in favor of respondent; that they are distinguishable from those in *Commissioner* v. *Gerstle*, *supra*, for the reasons above set forth and on grounds similar to those thought to be sufficient for the same distinction in the *Del Mar* case; and that on this issue respondent's action was correct.

The second question, petitioner's right to obtain the benefit of a capital stock tax return filed out of time, is conceded by respondent to have been disposed of contrary to his contention by *Del Mar Addition* v. *Commissioner*, *supra*, and *Jordan Creek Placers*, *supra*. On this issue petitioner is accordingly to be sustained.

Finally, petitioner contests the imposition of penalties for failure to file corporate returns. The question under the Revenue Act of 1936, section 291,[2] is whether there was reasonable cause for the failure. We should be more easily persuaded of the justification for the omission to file corporate returns if there had been a voluntary filing of the documents proper on any permissible theory. Cf. *Germantown Trust*

---

[2] SEC. 291. FAILURE TO FILE RETURN.

In case of any failure to make and file return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. * * *

*Co.* v. *Commissioner*, 309 U. S. 304. But petitioner never filed fiduciary returns, which would have been appropriate on the assumption that there was a true trust, nor partnership returns, called for in a joint venture, except for the three latest years and then only when the respondent so demanded. The trustee testified to his familiarity with the provision of law requiring the filing of association returns, which is the same section [3] as that classifying joint ventures as partnerships and trustees as fiduciaries; and see, e. g., Revenue Act of 1932, sections 189, 142. If the reasonable cause for failure to file corporate returns was the assumption that petitioner was not an association taxable as a corporation, that fails to explain the apparent indifference to the filing of the returns which would have been necessary under petitioner's own theory. Information returns, the only ones regularly and voluntarily filed, would fail to supply respondent with that factual material to which he was entitled, even upon petitioner's assumptions. Cf. *Germantown Trust Co.* v. *Commissioner, supra.* The record lacks the slightest effort to explain the consistent failure to file any returns of income whatever. We are not convinced that petitioner has sustained its burden of proving that failure to file the returns required was due to "reasonable cause." See *Frank W. Ross*, 44 B. T. A. 1, 16. Respondent's imposition of the delinquency penalty is approved.

*Decision will be entered under Rule 50.*

[3] E. g., Revenue Act of 1932, sec. 1111.