DAROL TRADING ACCOUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81519.    Promulgated July 28, 1936.

*John E. McClure, Esq.*, and *Millard L. Thompkins, Jr., Esq.*, for the petitioner.

*R. N. McMillan, Esq.*, for the respondent.

838

Morris: Guided by the principles laid· down in *Morrissey* v. *Commissioner*, 296 U. S. 344, we find not the slightest "resemblance" of an incorporated body in this case. It lacks resemblance in both substance and form—in substance, in that it was never intended by the parties in interest that they should enjoy the rights, privileges, or immunities of stockholders in an incorporated enterprise—nor did they enjoy such rights, privileges, or immunities, under the incorporation laws of the state of their activities—in form, in that they operated under no guise indicating incorporation; there were no bylaws, nor anything resembling them; there was no corporate seal; there were no officers or directors, nor any body even slightly resembling them; there were no certificates of ownership issued or intended to be issued for the ready transfer of interests; no meetings, similar to those customarily held by directors of a corporate body, were held; there were no employees, the venture occupied no office space and had no mailing address other than the office of Hutton & Co., which, as agent for the optionor, Girard, brought the parties

in the venture together. These factors, in and of themselves, while not decisive, are, nevertheless, persuasive. *Morrissey* v. *Commissioner, supra.*

In that case, after reviewing the applicable statute, the earlier cases, and the regulations of the Department, and after rereviewing the legislative background, the Court proceeded to define what it termed the "salient features" of a trust, "when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization."

By no stretch of the imagination could it be said that this petitioner was "carrying on" a business enterprise, within the reasonable interpretation of those words as used by the Supreme Court. Obviously, any transaction, be it ever so trivial, entered into for personal gain, may be said to be a "business" enterprise, and so restricting the matter, this petitioner would fall squarely within the definition. But, the addition of the words, "carrying on", connotes not only general activity, but continuity, far beyond the confines of the facts of this case. This venture was limited to the consummation of a sale of a specific block of stock. Its duration was limited by the expressed language of the option to one month from the date thereof. Actually, however, the venture was completed and closed within 13 days. True, 35,700 shares were dealt in, but these additional shares were merely incidental to the expeditious and profitable fulfillment of the purpose of the venture.

The Court there refers to the fact that a corporate organization "as an entity, holds the title to the property embarked in the corporate undertaking." Here, the "entity", if there could be said to be such, within the meaning of the word, as used, owned no property. The property, the subject matter of the venture, i. e., 25,000 shares of McKesson & Robbins stock, was owned by the optionor, who was a participant only in the sense that she had those shares to sell at a stated figure, plus 25 percent of any profit to be derived from their sale. She, in effect said, to Hutton & Co., "I have 25,000 shares of stock, which I would like to sell, and in order that I may be insured against loss in their sale, I am willing to forego 75 percent of the profit, in order that that may be accomplished." To this end the two participants joined the venture with the understanding that they would share in 75 percent of the profit merely for the assurance by them that no loss would be suffered by the optionor.

The Court refers to the fact that a trust may be perpetuated, notwithstanding the death of the owners of beneficial interest, thus rendering themselves akin to owners of corporate shares, and also to the fact that the "trust type of organization facilitates, as does a

corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants." It is safe to say that, in the absence of provision for the transfer of the interests of the real participants in this venture, they, even if they had marketable interests, could not transfer them prior to the completion of the venture and the determination of what those interests were. Furthermore, the transferees of such interests would necessarily have to be approved by the optionor since their financial ability to indemnify against loss was of the essence of their interests in the venture. Undoubtedly the type of transfer, to which the Court refers, should be reasonably free of restriction.

Finally, the Court refers to the fact that the trust method permits of limited liability, as in the case of a corporation. It seems only necessary to point out here that the only person enjoying limited liability was the optionor—the real participants agreed to indemnify the optionor against loss in consideration of their hoped for profit in the venture.

Subdivision (a) (3) of section 1111 of the Revenue Act of 1932 provides as follows:

The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

In our opinion the petitioner falls squarely within the term "partnership" as defined in the foregoing provision, which was inserted for the first time in the Revenue Act of 1932.

In so deciding, we are relieved of the necessity for considering the second issue pertaining to the statute of limitations.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*