The National Metropolitan Bank, Surviving Trustee of the Walter Brownley Trust v. Commissioner.
National Metropolitan Bank v. Commissioner
Docket No. 110644.
United States Tax Court
1943 Tax Ct. Memo LEXIS 39; 2 T.C.M. (CCH) 1055; T.C.M. (RIA) 43497; December 7, 1943
*39 Earl W. Shinn, Esq., 1210 Shoreham Bldg., Washington, D.C., for the petitioner E. M. Woolf, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in income and excess profits taxes as follows: Year
Income Tax
Profits Tax
1937
$1,610.87
$2,188.41
1938
2,100.07
2,266.59
1939
1,342.32
1,519.00
The only issue presented is whether the petitioner is a trust, taxable as such, or an association, taxable as a corporation. Findings of Fact The petitioner, The National Metropolitan Bank, sometimes hereafter referred to as Metropolitan, is the sole surviving trustee of the Walter Brownley Trust and filed its income tax returns for the years 1937 through 1939 with the Collector for the District of Maryland. In 1923 and for a number of years prior thereto, Walter Brownley conducted a candy business in Washington, D.C., at the premises known, respectively, as 1205 G Street, N.W., and 1300 F Street, N.W. The business was profitable and was the foundation of a substantial estate built up by Brownley during his lifetime. In 1923 and in addition to the candy business and the personal property employed *40 therein, he owned other personal property and certain real estate. On April 30, 1923, Brownley organized, under the laws of Deleware, two corporations, known as Brownley's, Inc., and Brownley Investment Company, each with authorized capital stock of 1,000 shares of no par value. He transferred the candy business together with the personal property used therein to Brownley's, Inc., in exchange for all of its capital stock. He transferred all of his then owned real estate and personal property, except household effects, 10 shares of stock in National Metropolitan Bank and his stock in Brownley's, Inc., to Brownley Investment Company in exchange for its entire capital stock. At the direction of Brownley, one share of stock in each of the corporations was issued to Emma Brownley, his wife, and one Friedman, to qualify them as directors of the respective corporations. Subsequent to its formation Brownley Investment Company, sometimes hereafter referred to as Investment Company, acquired by purchase and by transfer from Brownley, other properties including valuable real estate situated in the District of Columbia. On September 7, 1923, Walter Brownley and Metropolitan, James H. Johnson *41 and Edward R. Brownley, a brother of Walter Brownley, executed an instrument, sometimes hereafter referred to as the instrument of September 7, 1923, in which Walter Brownley was party of the first part and grantor and the other persons were parties of the second part and trustees. The instrument recited the transfer in trust by Walter Brownley, to the second parties and their receipt of 997 shares of stock in Brownley's, Inc., and 997 shares of stock in Brownley Investment Company which they were to hold. It also authorized similar transfer by Brownley of other property to second parties. The second parties were given full discretionary powers of management, sale and resale, investment and reinvestment of the trust property, subject, however, to a power retained by Brownley to direct any sales of the said property and the investment or reinvestment thereof. It was also provided that no sale or investment should be made during his lifetime except upon his written direction and approval. Brownley reserved the power to direct the voting of the aforesaid stocks or any others that might be held under the instrument during his lifetime. The instrument provided that after paying the costs *42 and expenses of administering the fund, the parties of the second part should pay over the net income therefrom to Walter Brownley during his lifetime, unless the agreement should be sooner terminated, and that upon his death, with the agreement still in force, pay over from the net income the following amounts annually to the persons named, during the remainder of their respective lives: Emma Brownley, $12,000, Carrie Bailey, sister of Walter Brownley, $2,000, and William C. Brownley, brother of Walter Brownley, $1,500. It was also provided that if at the time of the death of Walter Brownley, any indebtedness be existing on the building located on the Southwest corner of 13th and F Streets, N.W., Washington, D.C., and owned by Brownley Investment Company, the trustees, with due regard to the fulfillment of the requirements for the above stated payments to Brownley's wife, sister and brother and the efficient management of said investment company, were to apply such reasonable portions of the profits of said investment company to the retirement of the indebtedness, to the end that it might be paid off as speedily as possible. Such net income as might remain after the fulfillment *43 of the foregoing provisions, and, after the death of Walter Brownley's wife, sister and brother, all of the net income from the fund, was to be paid in perpetuity to such hospitals and orphan asylums in the District of Columbia as the parties of the second part should deem deserving, and in such proportions as they might deem proper. The instrument recited the desire of Walter Brownley that after his death Edward R. Brownley and E. J. Leesnitzer, a brother-in-law of Walter Brownley, be continued in the employment of Brownley's, Inc., provided they should so desire, each to receive as compensation an amount equal to 25 percent of the dividends declared on the shares of stock of the corporation held by parties of the second part under the instrument. The continuation of such employment was to be discretionary with the officers or manager of the corporation and dependent upon the rendition of efficient and satisfactory services by Edward R. Brownley and Leesnitzer. The instrument further recited the hope and desire of Walter Brownley that the parties of the second part, through their stock control of Brownley's Inc., should continue to operate the candy business then operated by him *44 at the F and G Street locations. It was also provided that if he had not done so during his lifetime, the trustees might in their discretion through their stock control of Brownley Investment Company and at a time deemed suitable, erect a modern six or seven story building at the corner of 13th and F Streets, N.W., to be known as the "Brownley Building". The instrument provided that Brownley should have the right to terminate the agreement or to withdraw any portion of the property held thereunder at any time upon giving previous written notice, not exceeding ten days. On the same day that Walter Brownley executed the above-described instrument, he executed his will wherein he named Metropolitan, James H. Johnson and Edward R. Brownley as executors thereof and left all the property which he might own at the time of his death, after payment of debts, expenses, etc., to Emma Brownley if she should survive him, otherwise share and share alike to those surviving him of Carrie Bailey, William C. Brownley and Edward R. Brownley. Pursuant to the instrument of September 7, 1923, Walter Brownley transferred to the parties of the second part named therein, 997 shares of stock in Brownley's, *45 Inc., and a like number of shares in Brownley Investment Company, which they continued to hold in their custody until after his death on March 20, 1930. As between himself and the corporations, Walter Brownley, in a number of reports, handled the assets and conducted the business of the two corporations as though they were his individual properties. But some corporate meetings were held. Income tax returns were filed for the corporations and the taxes were paid thereon. The earnings of the corporations were not reported by Brownley as his income until after he had withdrawn them from the respective corporations. As far as disclosed all transactions with the public involving the business and properties of the corporations were conducted in the name of the respective corporations, including the acquisition by purchase of real estate in its own name, by Brownley Investment Company. During his lifetime, the parties of the second part to the instrument of September 7, 1923, permitted Walter Brownley to handle the affairs of the two corporations as he saw fit. They never during his lifetime performed nor attempted to perform any functions or duties under or in furtherance of the terms *46 of the instrument other than to retain custody of the certificates of stock in the corporations Although large sums of money were earned by each of the corporations, said parties of the second part never, in their capacity as such, received any fees, or commissions or any income, dividends or return of any kind. Walter Brownley was survived by his wife, Emma Brownley, his sister, Carrie Bailey, his brothers, Edward R. and William C. Brownley, and his brother-in-law, E. J. Leesnitzer. Shortley after her husband's death Emma Brownley conferred with Otis Kent, a lawyer, with whom she and Brownley had been well acquainted during the latter's lifetime. After examining the will and the instrument of September 7, 1923, Kent told her that in his opinion the latter could be set aside. She had conferred with other counsel before consulting him, however, and he declined to represent her. To her inquiry as to whether he would represent Brownley's sister and brothers, he replied that if they were represented by someone who knew less about the situation than he, the will might stand, in which case she would get the entire estate, but that if the brothers and sister engaged him he would represent *47 them the best he could. It was his opinion that under a fair settlement Emma Brownley would get one-half of the estate and Brownley's sister and brothers the other half in equal shares. She stated that such a division of the estate would be satisfactory to her. Shortly thereafter Brownley's sister and brothers conferred with Kent about representing them. To them he expressed the opinion that both the instrument of September 7, 1923, and the will could be set aside, and the holdings of property by the corporations, including the real estate holdings of Brownley Investment Company, could be abrogated; that such action would establish the estate as intestate with approximately 95 percent thereof consisting of realty; that they would then receive two-thirds of the candy business and as to the realty Emma Brownley would be entitled only to a life interest in one-third thereof; that Brownley's sister and brothers would be entitled immediately to two-thirds of the real estate and upon the death of Emma Brownley they would receive the remainder interest in the one-third as to which she had had a life interest. He advised them, however, that he would represent them only on condition that they *48 agree to take one-half of everything and allow Emma Brownley to take the other half. They accepted his condition and engaged him to contest the will. Thereafter Kent held conferences with representatives of Metropolitan, one of the executors named in the will and one of the parties of the second part to the instrument of September 7, 1923, for the purpose of obtaining Metropolitan's assent to the division of the estate on the above-mentioned basis of one-half to Emma Brownley and one-half to her husband's sister and brothers. During these conferences Kent suggested that it would be fitting to pay deference to Walter Brownley's charitable intention as indicated in the instrument of September 7, 1923. After negotiations had been conducted by Kent over a period of several months, Metropolitan, James H. Johnson, Edward R. Brownley, Emma Brownley, Carrie Bailey and William C. Brownley signed an agreement on September 4, 1930. This agreement had for its purpose and resulted in the admission of the will to probate and the appointment of the parties named therein as executors; the renunciation by Emma Brownley to take under the will; the setting aside by court action of the instrument of *49 September 7, 1923, on the ground, among others, that it was not a valid testamentary disposition of property; the dissolution of Brownley's, Inc., and the Investment Company; and the distribution and transfer of the assets of the estate as follows: to Emma Brownley, one-half, Carrie Bailey, one-sixth, and Edward R. and William C. Brownley, one-sixth each. The agreement of September 4, 1930, also provided that upon distribution of the assets the distributees would enter into a trust agreement with certain charitable features and would immediately retransfer the assets to the executors in the capacity of trustees. Brownley's, Inc., and Brownley Investment Company were dissolved on October 31, 1930. The net assets taken over from the former by the executors amounted to approximately $19,000 and consisted entirely of personal property while those taken over from the latter amounted to approximately $1,000,000 and consisted principally of real estate. On October 29, 1931, the Walter Brownley estate was distributed in undivided shares as follows: Cash
$ 14,719.37
Miscellaneous Property
196.00
* Investments
99[ * ] 3.00
Fixtures and Equipment
15,623.13
** Real Estate
$1,328,790.00
Less: Mortgages
Payable
406,000.00
922,790.00
$1,053,829.48
Emma Brownley (1/2)
526,914.74
Carrie Bailey (1/6)
175,638.25
Edward R. Brownley (1/6)
175,638.25
William C. Brownley (1/6)
175,638.24
$1,053,829.48
*50 On the same day, October 29, 1931, following the foregoing distribution and pursuant to the agreement of September 4, 1930, Emma Brownley, Carrie Bailey, William C. Brownley and Edward R. Brownley, as grantors, entered into an agreement with Metropolitan, James H. Johnson and Edward R. Brownley, as trustees. In said agreement said grantors expressly ratified and affirmed all acts of the executors of the will of Walter Brownley during their administration of his estate. Under the agreement the grantors transferred in trust to the trustees the candy business conducted at 1205 G and 1300 F Streets, N.W., and the other assets, with minor exceptions not material herein, which they had received that day in distribution of the estate of Walter Brownley. Provision was made to permit the addition of other property to the trust corpus. The agreement provided that the trustees should manage the operations of the candy business and should manage the securities and parcels *51 of real estate, collect the income therefrom and pay all necessary costs and expenses for the upkeep and maintenance thereof and incidental thereto. Subject to the restriction that the parcel of realty located at 705 12th Street, N.W., known as the Bragg Building, and the parcel known as 1300 F Street, N.W., were to be retained and maintained as hereafter mentioned, the trustees were given complete discretionary powers of investment, reinvestment and changing investments, and of sale and resale, also the power to exchange or mortgage the properties or any part of the trust fund, to borrow money and pledge as security therefor any property of the trust, and to lease any real estate belonging to the trust, even though the leases might extend beyond the 20-year period hereafter mentioned. Although the trustees were not given permission to sell the Bragg Building or the 1300 F Street, N.W., property, they were authorized, in their discretion, to remodel the Bragg Building or to replace it with a new structure. Until such time as they should be in position to construct a building to be known as the Brownley Building, hereafter mentioned, the trustees were authorized to remodel or replace *52 with a new structure any of the buildings then or thereafter erected on the 1300 F Street, N.W., property. The trustees were authorized to retain the securities transferred to them at the time of the signing of said agreement and such securities or other property as might thereafter be transferred to them by the grantors, without liability for loss or decrease in value, but in the making of future investments they were restricted to such properties as are considered legal investments for trustees in the District of Columbia. Purchasers of trust property and others paying money to the trustee were relieved of any obligation to see to the proper application by the trustees of money so paid. The trustees were authorized in their discretion to conduct under the name of "The Brownley Trust" any or all of the businesses and operations contemplated by the agreement. Provision was made for the continued conduct of the candy business at 1205 and 1209 G and at 1300 F Streets, N.W., or at substitute sites provided by the trustees and acceptable to the grantors, without any accounting for or payment of rent for a period of 20 years from the date of the agreement and thereafter until the death *53 of the last surviving grantor. These provisions were subject to modification or abrogation by the trustees with the concurrence of Emma Brownley, and at least one other grantor, during her lifetime and after her death, with the concurrence of a majority of the surviving grantors, if any. It was provided that in their conduct of the candy business the trustees should continue to employ E. J. Leesnitzer as manager and Edward R. Brownley as assistant manager during their respective lives, or until their voluntary retirement, or their incapacitation for further acceptable performance of their respective duties, any question as to their competence to be settled by arbitration. Subject only to proper performance of their duties they were to receive annually the amounts of $6,500 and $5,000, respectively, as salary, and as additional salary 25 percent of the net profits. The trustees were to pay Emma Brownley, out of the income of the candy business and as salary, the amount of $2,500 a year so long as she might live and elect to perform any substantial service in connection with that business. The banking and other accounts of the candy business were to be kept separate and apart from the *54 general accounts of the trustees and to be subject to periodic and independent audits at their discretion. All net earnings of the business remaining after payment of the above-mentioned amounts to Leesnitzer and Edward R. Brownley and Emma Brownley were to be paid over to the trustees and by them reserved or distributed as any other trust income. The provisions respecting the continuation of the employment of Leesnitzer and Edward R. Brownley in the candy business grew out of their previous employment therein, and as to Leesnitzer, from the desire of his sister, Emma Brownley, that definite provision be made for him in the trust agreement. During the period from March 20, 1930, the date of Walter Brownley's death, to October 31, 1930, the date of the dissolution of Brownley's, Inc., the candy business sustained a loss of $105.34. During the eight-month period from November 1, 1930, through June 30, 1931, the profits amounted to $7,698.58. The provision that the business was to be operated on trust property rent free was inserted for the reason that it was thought that it might not otherwise be able to earn the yearly amounts to be paid as salaries to Leesnitzer and Edward R. and *55 Emma Brownley, totaling $14,000. It was considered that the income from the business would be satisfactory if sufficient to pay the three amounts. It was provided that the income arising from the candy business and other property of the trust after payment of current repairs to buildings and other incidental expenses should be applied by the trustees as follows: (1) to the payment of current taxes; (2) to the payment of trustees' commissions; (3) to the payment of interest on mortgage and other indebtedness, except loans appertaining to the candy business, the principal of which and interest thereon were to be paid out of the income of said business; (4) to the establishment of a sinking fund for retirement of trust indebtedness, exclusive of indebtedness of the candy business; (5) to the establishment of a contingent reserve, out of which to make payment to the grantors in such year or years when the income available for distribution should fall short of the reasonable requirements of the grantors; and (6) to distribute the remaining income in quarterly installments, one-half to Emma Brownley, and one-sixth each to Carrie Bailey, William C. Brownley and Edward R. Brownley. The amount *56 annually applicable to the sinking fund under (4) above was to be not less than 5 percent of the annual net income of the trust, after deduction of the payments provided for in (1) through (3), and in no event less than $5,000. The amount annually applicable to the sinking fund under (5) above was to be not more than 5 percent of the net income of the trust, and in any case not more than $5,000. With respect to the sinking fund (5), however, at least 50 percent of the reserve unexpended at the end of the second year of accumulation and at the end of each year thereafter was to be distributed to the grantors in the proportion shown in (6) above. It was provided that the income should be distributed in the foregoing proportions for a period of not less than 20 years from the date of the agreement, and thereafter until the death of the last surviving grantor, if any of them should survive the 20-year period. Each of the grantors, including the last survivor if he or she should die before the expiration of the 20-year period had the right to bequeath the portion of the income he or she would be entitled to, if living, to whomsoever he or she might designate by will. The person or persons *57 so designated were given the right to receive said income or to assign or bequeath it, during and throughout the 20-year period or thereafter until the death of the last surviving grantor. It was further provided that any income not so bequeathed or assigned should be distributed among the surviving grantors. Upon the death of the last surviving grantor or the expiration of the 20-year period, whichever is later, all the above-stated distributions of income are to cease and thereafter not less than 50 per cent of the income is to be accumulated and applied to the construction, on the property at 1300 F Street, N.W., of a building in keeping with the Bragg Building and to be known as the Brownley Building. The Brownley and Bragg Buildings are to be forever retained and maintained by the trustees not only as investments of the trust estate, but also in the case of the Brownley Building as a memorial to Walter Brownley and his family, and in case of the Bragg Building, as a symbol of Walter Brownley's devotion to and in memory of his mother. The remainder of the net income, and all of the net income after payment of the costs of construction of the Brownley Building, is to be distributed *58 by the trustees in perpetuity to such public charitable hospitals and orphan asylums in the District of Columbia as they shall deem to be deserving, with the proviso that they may withhold not in excess of 25 percent of the amount available in any year, and add the same to the corpus of the trust estate. Provision was made for the trustees to meet with the grantors at least twice a year at stated times for the discussion of all matters of common interest. Provision was also made for the settlement by arbitration of any disagreement between the trustees and any of the grantors. All powers granted to or duties imposed upon, the trustees by the agreement are to inure to the benefit of and to be binding upon said trustees, the survivors or survivor of them, or the trustee acting in execution of the trust. The two individual trustees are dead, James H. Johnson having died in September 1936, and Edward R. Brownley in March 1942. The trustees took over and have operated the candy business and other properties transferred to them and so far as disclosed have exercised the powers conferred and duties imposed on them by the trust agreement as occasion arose. During the lifetime of the individual *59 trustees, all trustees took an equally active part in the conduct of trust affairs. They determined all matters of policy respecting the candy business, including the determination of the required amount of help to be employed and left to Leesnitzer and Edward R. Bromley, manager and assistant manager, respectively, the handling of the details involved in the execution thereof, together with other details involved in the conduct of the business. The trustees leased the real estate, maintained the improvements thereon in a good state of repair, and received the rentals as they were paid. In 1932 a new building was erected at a cost of approximately $75,000 on the parcel of real estate known as 1309 F. Street, N.W., while in the same year a new building was erected, designated as the Brownley Building, at a cost of approximately $136,000 on the parcel of real estate situated at 13th and F Streets, N.W. The trustees sold the 1309 F Street property sometime after 1939 in order to reduce trust indebtedness. In the early years of the trust, they sold one of the five blocks of securities transferred to them by the grantors and used the proceeds of the sale in payment of expenses of administering *60 the trust. The trustees held no regular meetings, but up to the time of Edward R. Brownley's death they had met about 40 times, or on an average of about 4 times a year. At such meetings they considered matters relating to the conduct of the candy business, the handling of the real estate, and the distribution of income to the grantors. At some undisclosed date or dates after the creation of the trust the candy business was consolidated into one store and moved from the location at 1300 F Street, N.W., to a building at 1304 F Street, N.W., which was also owned by the trust and which theretofore had been rented at $10,000 a year. With the possible exception of the first year following the creation of the trust, the income of the candy business, even though no rent was paid, has not been large enough to result in a profit after full payment of the amounts, designated in the trust agreement as salaries, to Leesnitzer and Edward R. and Emma Brownley. In fact, the income of the business declined to the point where in order to cut down overhead expenses the amounts specified for Leesnitzer and Edward R. Brownley were reduced. About the first of 1933 the basic amount designated as salary *61 of Leesnitzer was reduced from $6,500 a year to $3,800 and thereafter remained at that amount through 1939. During 1937 through 1939 the amount paid Edward R. Brownley was $2,500 a year. For 1937 he and Leesnitzer each received as additional salary or bonus, the amount of $653.40. During each of the years 1937 through 1939 Emma Brownley received $2,500 as salary. Following is a statement, as shown by the income tax returns for 1937, 1938 and 1939, of the sales by the candy business, the total rentals received and the net income of the trust before deduction of payments as salaries to Edward R. and Emma Brownley: Sales of
Total
Net Income
Candy
Rentals
of the
Business
Received
Trust
1937
$98,731.06
$67,723.65
$25,198.29
1938
84,216.42
70,814.39
25,596.75
1939
81,856.66
67,495.67
19,633.70
In determining the deficiencies involved herein, the respondent determined that the Walter Brownley Trust was an association within the purview of section 1001 (a)(2) of the Revenue Act of 1936, section 901 (a)(2) of the Revenue Act of 1938 and section 3797 (a)(3) of the Internal Revenue Code, and was taxable as a corporation. Opinion The sole question is whether *62 the petitioner comes within the classification determined by the respondent. Both petitioner and respondent cite Morrissey v. Commissioner, 296 U.S. 344, for a statement of the characteristics of a trust taxable as an association. In that case the Supreme Court pointed out that the principal characteristics of an association are (1) associates who enter into joint enterprise for the transaction of business and the sharing of the gains and profits therefrom; (2) the vesting in the trustees of title to the property used in the enterprise; (3) designation of the trustees as a continuing body; (4) centralized management; (5) security of the enterprise from termination or interruption by the death of the owners of the beneficial interests; (6) the facility of transfer of beneficial interests without affecting the continuity of the enterprise and the introduction of large numbers of participants; (7) limitation of personal liability of the participants to the property embraced in the undertaking. The petitioner submits two main contentions in support of its position that the trust created by the agreement of October 29, 1931, and operative throughout the *63 years in controversy, does not come within the classification determined by respondent. The first of these contentions is that the trust was created primarily to carry out the charitable intendments of Walter Brownley set out in "an antecedent testamentary trust", namely, the instrument of September 7, 1923. With respect to this contention, we find that the grantors under the agreement of October 29, 1931, namely, Emma, Edward R. and William C. Brownley, and Carrie Bailey united in getting the court to set aside the instrument of September 7, 1923, which by its terms provided for what the petitioner now designates the "antecedent testamentary trust". Further, they united in having the estate of Walter Brownley distributed to themselves in agreed proportions, subject to an agreement to retransfer it in trust. Finally they joined in the execution of the agreement of October 29, 1931, and transferred the property to the trust created by that agreement. The provisions of that agreement, especially those relating to the distribution of income to the grantors are materially different from the provisions of the instrument of September 7, 1923. Under the instrument of September 7, 1923, *64 in which Walter Brownley was named as grantor, Edward R. Brownley was not entitled to any distribution of trust income. Emma and William C. Brownley and Carrie Bailey were entitled to receive distributions of stated amounts annually during their respective lives, with no distributions to be made with respect to them after their respective deaths. Under the agreement of October 29, 1931, Edward R. Brownley became entitled to one-sixth of the distributable income, as did Carrie Bailey and William C. Brownley. Emma Brownley became entitled to one-half. Distributions in the foregoing proportions were to continue for at least 20 years from the date of the instrument and thereafter during the life of the last survivor of said grantors, if any of them should survive the 20-year period. All of said grantors had the right to bequeath, to whomsoever he or she wished, the portions of the income he or she would have been entitled to take, if living, and the recipient or recipients of such bequest might receive, assign or bequeath the share or shares of income to which he or she thus had become entitled. Any income not so bequeathed or assigned was distributable among the survivors of the grantors. *65 No distribution to charity is possible prior to the expiration of a period of 20 years from October 29, 1931, and none thereafter so long as ony one of the grantors continues to live. Undeniably the instrument of September 7, 1923, and the agreement of October 29, 1931, had certain charitable objectives which in a measure were common to both. But as pointed out above, the agreement of October 29, 1931, had other and different objectives to those contained in the instrument of September 7, 1923. If the parties to the agreement of October 29, 1931, had been primarily interested in carrying out the charitable provisions of the instrument of September 7, 1923, it would have been easy for them to have shown such an intention either by having joined in establishing the validity of that instrument or by having embodied in the agreement of October 29, 1931, provisions respecting charity that were more nearly identical with those contained in the instrument of September 7, 1923. The agreement of October 29, 1931, rendered impossible the carrying out in full of the charitable intendments expressed in the instrument of September 7, 1923. Only in a limited and restricted manner can such intendments *66 be carried out and then only after the death of the last surviving grantor, a postponement not contemplated in the instrument of September 7, 1923. The dissimilarity of the provisions of the two documents leads us to the conclusion that the primary purpose of the agreement of October 29, 1931, was not to carry out the charitable provisions of the instrument of September 7, 1923, but to provide an arrangement whereby the grantors could associate the interests acquired by them from the Walter Brownley Estate for the production of income, and share the income therefrom for a period of at least 20 years and as long thereafter as any of them might live. The petitioner's other main contention is that since the inception of the trust on October 29, 1931, the activities of the trustees have been confined to the maintenance and conservation of the trust properties, to the collection of trust income and the distribution thereof to those entitled to receive it. The petitioner particularly denies that the trustees were ever engaged in conducting the candy business. The two corporations, Brownley's, Inc., and Brownley Investment Company, continued to carry on their separate business until the *67 death of Walter Brownley in March 1930, and apparently thereafter until their dissolution on October 31, 1930. The agreement of September 4, 1930, which was preliminary to and the antecedent of the agreement of October 29, 1931, provided for the dissolution of the two corporations. In the instrument of September 7, 1923, Walter Brownley expressed the hope and desire that the trustees, through their stock ownership in Brownley's, Inc., should continue the operation of the candy business. The continuation of the business was not made mandatory. However, both the agreement of September 4, 1930, and that of October 29, 1931, specifically provided for the continuation of the candy business under the supervision or management of the trustees. Both instruments further provided that the trustees should also manage the properties distributed in dissolution by Brownley Investment Company. Continuously since the execution of the agreement of October 29, 1931, the trustees or their survivors have managed the real estate and other properties distributed in dissolution by Brownley Investment Company. They or their survivor also continued the operation of the candy business determining its general *68 policies and leaving to others the execution of the details thereof. Under these circumstances we are unable to conclude that the trustees were not engaged in the conduct of the candy business or that their activities were confined to the maintenance and conservation of the trust properties and the collection and distribution of the income therefrom. The petitioner also contends that the candy business was not continued by reason of a profit motive but for the purpose of providing a partrimony by way of employment for three individuals, Emma and Edward R. Brownley and Leesnitzer, whose adult lives had been devoted to the services of Walter Brownley. That contention might have some merit if the agreement of October 29, 1931, had provided that all of the profits of the business were to go to those three persons and Emma and Edward R. Brownley had not been two of the grantors of the trust. Under the agreement of October 29, 1931, any income of the candy business remaining after payment in full of the amounts designated as salaries is to be reserved or distributed by the trustees as any other trust income. That provision indicates an expectation that there would or might be periods when *69 the income from the business would exceed the amounts designated as salaries, and there is some testimony that possibly during the first year of the trust the income from the business did exceed said amounts. There is also another objection to the contention. There is some evidence to the effect that the provision relating to the employment of Leesnitzer and Edward R. Brownley was in composition of their claims against the estate of Walter Brownley for certain bonuses he had promised them but which had not been paid. The conduct of a business by a trust in order to discharge claims against assets that became trust property is just as beneficial to those entitled to the income from the trust as if the business were operated to acquire additional trust property for the production of distributable income. The purpose and form of organization of the Walter Brownley Trust and its method of operation bring it within that group of associations which the Supreme Court in Morrissey v. Commissioner, supra, held were taxable as corporations. The decision in that case is controlling here. Such cases as Living Funded Trust of Harry E. Lyman, 36 B.T.A. 161; *70 Gibbs-Preyer Trusts v. Commissioner, 117 Fed. (2d) 619, and Pennsylvania Co. for Insurance on Lives and Granting Annuities v. United States, 48 Fed. Supp. 969, relied on by petitioner, are distinguishable on the facts. Decision will be entered for the respondent. Footnotes
*. Investments consisted of shares of stock in five corporations and an investment of $5,000 in the Brownley candy business. ↩
**. Real Estate consisted of 9 parcels of real estate situated in the District of Columbia.↩