Cameron Farm Property Trust, Albert E. Fletcher, Argus F. Robinson, and James W. Hughes, Trustees v. Commissioner.
Farm Prop. Trust v. Commissioner
Docket No. 11938.
United States Tax Court
1947 Tax Ct. Memo LEXIS 116; 6 T.C.M. (CCH) 923; T.C.M. (RIA) 47228; August 8, 1947
James W. Hughes, Esq., for the petitioner. Paul E. Waring, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Declared Value
Excess
Income
Excess-
Profits
Year
Tax
Profits Tax
Tax
Apr. 21, 1942 to
Dec. 31, 1942
$ 965.30
$ 610.04
$ 684.32
1943
1,406.57
1,443.07
4,817.17 The issues submitted for decision are: (1) whether the Commissioner erred in holding that the petitioner was an association within the provisions of section 3797(a)(3), I.R.C. and, as such, taxable as a corporation rather than as a trust; and (2) if the petitioner is held to be taxable as a corporation, whether the Commissioner erred, nevertheless, in imposing declared value excess-profits tax and excess *117 profits tax liability since the petitioner was not engaged in any business during the taxable years. Findings of Fact The petitioner, a trust, filed fiduciary income and victory tax returns for the taxable years with the collector of internal revenue for the district of Maryland. The Cecil Land Corporation, a Maryland corporation, (hereinafter called the corporation) was incorporated in October 1941 for the purpose of owning and operating a sand and gravel business. It purchased a tract of land consisting of 125 acres (hereinafter referred to as the property) for the purpose of establishing that business. That tract of land and the farm buildings thereon was the only property which it, and the trust hereinafter described, ever owned. The property is located on the east bank of the North East River, just below the town of North East, Maryland. Part of it is marshy and covered with scrub brush. That part was flooded occasionally and is not desirable for building purposes. Part of it is gravelly and sandy on the surface and is only moderately good for farming. Part of it is under water. The corporation in the fall of 1941 began to investigate the possibilities of conducting a *118 sand and gravel business on that property. Its investigation disclosed that equipment costs would be much higher than originally planned and a manpower shortage was likely. It abandoned its plan to enter the sand and gravel business on April 1, 1942 and on that date its directors authorized the conveyance of the property to a trust and the dissolution of the corporation. The property was conveyed by the corporation on April 21, 1942 by a trust indenture to three trustees, the petitioners herein. Those trustees were directors of the corporation and three of its seven stockholders. Those seven stockholders were the beneficiaries of the trust. The trustees were given the power to exercise all rights of ownership over the property including "the right to sell or mortgage all or a part thereof, to collect all rents and profits, to exploit the said property by the sale of timber, sand and gravel and any and all other valuable materials found thereon and to pay out of the funds derived from such rents, royalties, sales or mortgages, all taxes and other obligations against the property, particularly a certain Mortgage held by the First National Bank in North East, Maryland, dated October 20, 1941, and *119 certain other items set out in an Agreement of even date herewith and executed by the parties hereto." The agreement referred to was between the corporation and the three trustees. It provided that the trustees were to pay out of the revenues received from the property, after deduction of necessary expenses, such as taxes and the payments due on the mortgage, $120.10 to an attorney for his services and $300 to each of five named beneficiaries of the trust. The net balance of receipts remaining after the foregoing distributions was to be distributed among the seven beneficiaries of the trust, five of whom were to each receive one-sixth of such distribution, and two of whom were to receive the remaining one-sixth. The trustees were to make annual reports to the beneficiaries "or their heirs, successors, or assigns", of the status of the property and all operations. The beneficiaries, for themselves and "their heirs, personal representatives or assigns", reserved the right upon submission of the fifth annual report by the trustees to direct the trustees to convey the property then remaining to persons designated by the beneficiaries. In the absence of such direction the trustees were *120 to continue to act in the same manner. The beneficiaries could appoint a new trustee in the event of the death or disability of a trustee. The corporation was dissolved on July 17, 1942. Meanwhile negotiations had been carried on with Arundel Corporation (hereinafter called Arundel) an operating sand and gravel company which desired to lease and dredge the property for sand and gravel. The trustees leased the property to Arundel on April 29, 1942. The lease was for five years, unless the deposit of sand and gravel became exhausted prior to that time, and permitted the lessee to remove all marketable sand and gravel at the rate of five cents per ton with a minimum of $5,000 per year. Payments were to be made monthly. No excavation was to be made within 200 feet of the boundaries of the tract of land where it joined the lands of others. The dredging operations were to utilize first the low lying marshy land contained in the tract and they were to leave the bank with as few irregularities as possible. The lessee was to remove all obstructions to navigation in the waters of the area excavated. The lessors reserved the right to make such other use of the property as would not interfere *121 with the lessee's use thereof. The lessor remained liable for the taxes upon the leased property. The activities of the trustees after the execution of the lease consisted solely of receiving the rent or royalty payments from Arundel, receiving the rent from the small farm located on the property, paying taxes, fire insurance, interest and principal on the mortgage, and distributing the remaining balance to the beneficiaries. The trustees never made any other business use of the property. Royalties and rents were received as follows: 1942
$ 4,872.00
1943
11,167.91
1944
7,823.42 The petitioner is still receiving payments of approximately $7,800 a year from Arundel. The trustees never held any meetings. The trust has no officers, no seal, no printed stationery, does not keep minutes, and has never had any employees. It has never made any purchases or sales and has not had any expenses other than those above referred to. The only records that have been kept are bank statements and cancelled checks. There are no certificates or other documentary evidence of ownership in the trust. The trust did not hold or maintain any surplus. Everything was distributed. *122 The Commissioner explained his reasons for determining the deficiencies as follows: "It is held that you are an association taxable as a corporation under the provisions of Section 29.3797-3 of Regulations 111." The petitioner was not an association taxable as a corporation during the taxable years. Opinion MURDOCK, Judge: The first issue is whether the petitioner was an association taxable as a corporation within the meaning of section 3797 I.R.C., or was taxable as a trust under section 161. The tests for deciding this question have been discussed by the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, and in many other cases. If a trust is used to carry on a business in much the way in which a corporation would and the interested parties thereby accomplish much the same ends that they would had they used the corporate form, then the trust is regarded for tax purposes as a corporation and is taxed as a corporation. This is not so if a trust is used merely to accomplish some of the usual purposes of a trust. Here the petitioner did not carry on the sand and gravel business or any other during the taxable years. It merely received *123 the income from the two lessees of a single property, paid a few expenses and distributed the net proceeds promptly and in full. It bore little or no resemblance to a corporation either in its form or in its activities. Its activities were typical of those of a trust. Decision will be entered for the petitioner.