## MORRISSEY ET AL., TRUSTEES, v. COMMISSIONER OF INTERNAL REVENUE.

No. 17.   Argued October 18, 1935.—Decided December 16, 1935.

*Mr. Theodore B. Benson,* with whom *Mr. Charles Francis Cocke* was on the brief, for petitioners.

*Mr. James W. Morris,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Miss Helen R. Carloss* were on the brief, for respondent.

By leave of Court, *Mr. Claude A. Hope* filed a brief as *amicus curiae* on the question of what constitutes an "association" within the meaning of the Revenue Acts. *Mr. John Ross Delafield* was with him on the brief.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioners, the trustees of an express trust, contest income taxes for the years 1924 to 1926, inclusive, upon the ground that the trust has been illegally treated as an "association." The Circuit Court of Appeals affirmed the decision of the Board of Tax Appeals, which sustained the ruling of the Commissioner of Internal Revenue. 74

F. (2d) 803. We granted certiorari because of a conflict of decisions as to the distinction between an "association" and a "pure trust," the decisions being described in one of the cases as "seemingly in a hopeless state of confusion." *Coleman-Gilbert Associates* v. *Commissioner*, 76 F. (2d) 191, 193.[1]

The facts were stipulated. In the year 1921 petitioners made a declaration of trust of real estate in Los Angeles. They were to be designated in "their collective capacity" as "Western Avenue Golf Club." The trustees were authorized to add to their number and to choose their successors; to purchase, encumber, sell, lease and operate the "described or other lands"; to construct and operate golf courses, club houses, etc.; to receive the rents, profits and income; to make loans and investments; to make regulations; and generally to manage the trust estate as if the trustees were its absolute owners. The trustees were declared to be without power to bind the beneficiaries personally by "any act, neglect or default," and the beneficiaries and all persons dealing with the trustees were required to look for payment or indemnity to the trust property. The beneficial interests were to be evidenced solely by transferable certificates for shares which were divided into 2,000 preferred shares of the par value of $100 each, and 2,000 common shares of no par value, and the rights of the respective shareholders in the surplus, profits, and capital assets were defined. "Share ledgers" showing the names and addresses of shareholders were to be kept.

The trustees might convene the shareholders in meeting for the purpose of making reports or considering recommendations, but the votes of the shareholders were to be advisory only. The death of a trustee or of a beneficiary was not to end the trust, which was to continue

---

[1] *Post*, p. 369, Nos. 78–79. See, also, *post*, pp. 362, 365, No. 108, *Swanson* v. *Commissioner*, and No. 238, *Helvering* v. *Combs*.

for twenty-five years unless sooner terminated by the trustees.

During the years 1921 and 1922, the trustees sold beneficial interests and paid commissions on the sales. About 42 acres (of the 155 acres described by the declaration of trust) were plotted into lots which were sold during the years 1921 to 1923, most of the sales being on the installment basis. On the remaining property a golf course and club house were constructed, and in 1923 this property with the improvements was conveyed to Western Avenue Golf Club, Inc., a California corporation, in exchange for its stock. Under a lease from the corporation petitioners continued the operation of the golf course until January 12, 1924. After that date petitioners' activities were confined to collections of installments of principal and interest on contracts of purchase, the receipt of interest on bank balances and of fees on assignments by holders of purchase contracts, the execution of conveyances to purchasers, the receipt of dividends from the incorporated club, and the distribution of moneys to the holders of beneficial interests. On December 31, 1923, the total number of outstanding beneficial interests was 3016, held by 920 persons; by December 31, 1926, the number of interests had been gradually decreased to 2172, held by 275 persons. The holdings by the trustees ranged approximately from 16 to 29 per cent.

Petitioners contend that they are trustees " of property held in trust," within § 219 of the Revenue Acts of 1924 and 1926,[2] and are taxable accordingly and not as an " association." They urge that, to constitute an association, the applicable test requires " a quasi-corporate organization in which the beneficiaries, whether or not certificate holders, have some voice in the management and some control over the trustees and have an opportunity

---

[2] 43 Stat. 275; 44 Stat. 32.

to exercise such control through the right to vote at meetings"; and that, in any event, the activities in which petitioners were engaged, during the tax years under consideration, did not constitute "a carrying on of business" within the rule applied by this Court.

The Government insists that the distinction between associations and the trusts taxed under § 219 is between "business trusts on the one side" and other trusts "which are engaged merely in collecting the income and conserving the property against the day when it is to be distributed to the beneficiaries"; that Congress intended that all "business trusts" should be taxed as associations.

1. The Revenue Acts of 1924 and 1926 provided:

"The term 'corporation' includes associations, joint-stock companies, and insurance companies." 1924, § 2 (a) (2); 1926, § 2 (a) (2).[3]

A similar definition is found in the earlier Revenue Acts of 1917, § 200, 1918, § 1, and 1921, § 2 (2),[4] and also in the later Acts of 1928, § 701 (a) (2), 1932, § 1111 (a) (2), and 1934, § 801 (a) (2).[5]

The Corporation Tax Act of 1909,[6] which imposed an excise tax upon the privilege of doing business in a corporate capacity, embraced associations having a capital stock represented by shares and "organized under the laws of the United States or of any State or Territory." *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 144; *Eliot* v. *Freeman*, 220 U. S. 178, 186. The Income Tax Act of 1913,[7] taxed the net income of "every corporation, joint-stock company or association, and every insurance company, organized in the United States, no matter how cre-

[3] 43 Stat. 253; 44 Stat. 9.
[4] 40 Stat. 302; 40 Stat. 1058; 42 Stat. 227.
[5] 45 Stat. 878; 47 Stat. 289; 48 Stat. 771.
[6] 36 Stat. 112.
[7] 38 Stat. 172.

ated or organized, not including partnerships." The case of *Crocker* v. *Malley*, 249 U. S. 223, arose under the latter Act. The Court found that the declaration of trust in that case, relating to mill property was on its face " an ordinary real estate trust of the kind familiar in Massachusetts," and that the function of the trustees was " not to manage the mills but simply to collect the rents and income of such property as may be in their hands, with a large discretion in the application of it, but with a recognition that the receipt holders are entitled to it subject to the exercise of the powers confided to the trustees." The Court thought that, if it were assumed that the words " no matter how created or organized " applied to " association," still it would be " a wide departure from normal usage " to call the beneficiaries a joint-stock association when they were not partners and had " no joint action or interest and no control over the fund." Nor could the trustees " by themselves " be treated as a joint-stock association within the meaning of the Act " unless all trustees with discretionary powers are such." *Id.*, pp. 232-234.

The decision in *Crocker* v. *Malley* was rendered in March, 1919, and the Treasury Department thereupon assumed that the degree of control exercised by the beneficiaries over the management of the trust was determinative of the question whether the trust constituted an " association." See statement of the rulings of the Bureau by the Board of Tax Appeals in Woodrow Lee Trust v. Commissioner, 17 B. T. A., pp. 111, 112. It was in that view, that the Regulations under the Revenue Acts of 1918 and 1921, in distinguishing an " association " from a " trust," provided as follows:

" If, however, the *cestuis que trust* have a voice in the conduct of the business of the trust, whether through the right periodically to elect trustees or otherwise, the trust

is an association within the meaning of the statute." Regulations Nos. 45, 62, Art. 1504.

This ruling continued until our decision in May, 1924, in *Hecht* v. *Malley,* 265 U. S. 144, and furnished the test which the Board of Tax Appeals applied in its determinations for earlier years.[8] Accordingly, the Board in the case now before us, holding that under the trust instrument the shareholders " had no control over the trustees or the management of the business," determined that the trust was taxable as such and not as an association, for the years 1921, 1922 and 1923.

The case of *Hecht* v. *Malley* related to the excise taxes imposed upon " associations " by the Revenue Acts of 1916, § 407, and 1918, § 1000 (a).[9] The provision of the Act of 1916 retained the qualifying words of the Corporation Tax Act of 1909—" organized under the laws of the United States, or any State or Territory "—and the Court followed the construction placed upon those words in *Eliot* v. *Freeman, supra.* But the Act of 1918 omitted this qualification, and the excise tax as laid upon corporations applied to " associations " under the general definition. The Court thus found the terms of the Act of 1918 to be in significant contrast to the provisions of the Acts of 1909 and 1916. The omission of the qualification showed the intention of Congress " to extend the tax from one imposed solely upon organizations exercising statutory privileges, as theretofore, to include also organizations exercising the privilege of doing business as associations at the common law." 265 U. S. p. 155. Shorn of the restriction, the word " association " appeared to be used in its

[8] E. A. Landreth Co., 15 B. T. A. 655; Van Cleave Trust, 18 B. T. A. 486; Commercial Trust Co., 18 B. T. A. 1248; Rollin S. Sturgeon et. al., Trustees, 25 B. T. A. 368; Twin Bell Oil Syndicate, 26 B. T. A. 165.

[9] 39 Stat. 789; 40 Stat. 1126.

ordinary meaning, and we referred to several definitions found in standard dictionaries, as, *e. g.*, " a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise "; " a body of persons organized for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation "; " an organized but unchartered body analogous to but distinguished from a corporation." *Id.*, p. 157. We expressed the view that the word " association," as used in the excise tax provision of the Revenue Act of 1918, clearly included " Massachusetts trusts," of the sort there involved, " having quasi-corporate organizations under which they are engaged in carrying on business enterprises." We were careful to say that it was then unnecessary to determine " what other form of ' associations,' if any," the Act embraced. *Id.*

In the *Hecht* case, the trustees of the Hecht and Haymarket trusts relied strongly upon the decision in *Crocker* v. *Malley* as conclusively determining that those trusts could not be held to be associations, unless the trust agreements vested " the shareholders with such control over the trustees as to constitute them more than strict trusts within the Massachusetts rule." Reviewing the reasoning of that decision, we pointed out that it was not authority for the broad proposition advanced. We concluded that, when the nature of the trusts was considered, as the petitioners were "not merely trustees for collecting funds and paying them over," but were " associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises," the trusts were to be deemed associations within the meaning of the Act of 1918. This was true " independently of the large measure of control exercised by the beneficiaries." And we rejected the view that Congress intended that organizations of that character " should be exempt from

the excise tax on the privilege of carrying on their business merely because such a slight measure of control may be vested in the beneficiaries that they might be deemed strict trusts within the rule established by the Massachusetts courts."

Following this decision, the Treasury Department amended its regulation so as to provide that the distinction between an association and a trust should no longer depend upon beneficiary control. The new provision read:

"Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations within the meaning of the Act, regardless of the control exercised by the beneficiaries." Regulations No. 65, Art. 1504, issued in October, 1924, under the Revenue Act of that year.

This provision was amended in August, 1925, so as to read as follows:

"If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute." T. D. 3748, IV-2 Cumulative Bulletin 7.

The text of the regulations relating to associations, so far as pertinent here, promulgated under the Act of 1924, is set forth in the margin. Regulations No. 65, Arts. 1502,

1504, as amended.[10]   These regulations were continued substantially unchanged under the Revenue Acts of 1926 and 1928.   No. 69, Arts. 1502, 1504; No. 74, Arts. 1312, 1314.   The corresponding regulations under the Act of 1932 were somewhat modified, No. 77, Art. 1314; and these were considerably expanded by the regulations issued under the Act of 1934, No. 86, Art. 801–2, 801–3.

2. As the statute merely provided that the term " corporation " should include " associations," without further definition, the Treasury Department was authorized to supply rules for the enforcement of the Act within the

[10] "Art. 1502. *Association.*—Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to state laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. . . ."

"Art. 1504. *Association distinguished from trust.*—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341–347.   If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute,"

permissible bounds of administrative construction. Nor can this authority be deemed to be so restricted that the regulations, once issued, could not later be clarified or enlarged so as to meet administrative exigencies or conform to judicial decision. Compare *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299, 303–307. We find no ground for the contention that by the enactment of the Revenue Act of 1924 the Department was limited to its previous regulations as to associations. And, while the case of *Hecht* v. *Malley* was concerned with the special excise tax provision of the Revenue Act of 1918, the ruling of the Court that the degree of the control by beneficiaries was not a decisive test in that relation could by similar reasoning be applied to the general income taxes laid by the revenue acts upon corporations and thus upon associations. These general income taxes covered both those taxes which in their nature were excise taxes on business, and as such could have been laid prior to the Sixteenth Amendment, and those taxes on other income which were permitted by that Amendment. *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103, 107, 114. We think that the Department did not exceed its powers in rewriting its regulation, in the light of the decision in *Hecht* v. *Malley,* so as to provide with respect to the income taxes, in general, to be paid by associations, that the extent or lack of control by the beneficiaries of a trust should not in itself determine whether there was an association within the meaning of the statute. That the revised regulation had congressional approval is persuasively evidenced by the fact that the regulation, as amended in 1925, was continued without substantial alteration until 1933, and meanwhile Congress reënacted without change the general provision as to associations in the Revenue Acts of 1926, 1928, and 1932. See *Brewster* v. *Gage,* 280 U. S. 327, 337; *McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488, 492;

*Murphy Oil Co.* v. *Burnet, supra; Helvering* v. *Bliss,* 293 U. S. 144, 151.

The question is not one of the power of Congress to impose this tax upon petitioners but is simply one of statutory construction,—whether Congress has imposed it. See *Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U. S. 110, 114. The difficulty with the regulations as an exposition was that they themselves required explication; that they left many questions open with respect both to their application to particular enterprises and to their validity as applied. The so-called " control test " had led to much litigation, and the change in the regulations after the decision in *Hecht* v. *Malley* caused increased uncertainty. That situation is put in a strong light by the action of Congress, in order to afford relief to taxpayers, in enacting § 704 of the Revenue Act of 1928 as a " retroactive " provision applicable, as stated, to trust returns which had been filed for a taxable year prior to 1925 under previous regulations and rulings, and also by giving an option to a trustee, in specified circumstances, in relation to the Revenue Act of 1926 and prior Acts.[11] While it is impossible in the nature of things to translate the statutory concept of " association " into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create, the recurring disputes emphasize the need of a further examination of the congressional intent.

3. "Association " implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. This is not the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of

---

[11] 45 Stat. 880.

named or described persons. Such beneficiaries do not ordinarily, and as mere *cestuis que trustent,* plan a common effort or enter into a combination for the conduct of a business enterprise. Undoubtedly the terms of an association may make the taking or acquiring of shares or interests sufficient to constitute participation, and may leave the management, or even control of the enterprise, to designated persons. But the nature and purpose of the coöperative undertaking will differentiate it from an ordinary trust. In what are called " business trusts " the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise.

The Government contends that such an organized community of effort for the doing of business presents the essential features of an association. Petitioners stress the significance of, and the limitations said to be implied in, the provision classifying associations with corporations.

4. The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity. The resemblance points to features distinguishing associations from partnerships as well as from ordinary trusts. As we have seen, the classification cannot be said to require organization under a statute, or with statutory priv-

ileges. The term embraces associations as they may exist at common law. *Hecht* v. *Malley, supra.* We have already referred to the definitions, quoted in that case, showing the ordinary meaning of the term as applicable to a body of persons united without a charter " but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." These definitions, while helpful, are not to be pressed so far as to make mere formal procedure a controlling test. The provision itself negatives such a construction. Thus unincorporated joint-stock companies have generally been regarded as bearing the closest resemblance to corporations. But, in the revenue acts, associations are mentioned separately and are not to be treated as limited to " joint-stock companies," although belonging to the same group. While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive. Thus an association may not have " directors " or " officers," but the " trustees " may function " in much the same manner as the directors in a corporation " for the purpose of carrying on the enterprise. The regulatory provisions of the trust instrument may take the place of " by-laws." And as there may be, under the reasoning in the *Hecht* case, an absence of control by beneficiaries such as is commonly exercised by stockholders in a business corporation, it cannot be considered to be essential to the existence of an association that those beneficially interested should hold meetings or elect their representatives. Again, while the faculty of transferring the interests of members without affecting the continuity of the enterprise may be deemed to be characteristic, the test of an association is not to be found in the mere formal evidence of interests or in a particular method of transfer.

What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise,—who act " in much the same manner as directors "—may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking.

It is no answer to say that these advantages flow from the very nature of trusts. For the question has arisen because of the use and adaptation of the trust mechanism.

The suggestion ignores the postulate that we are considering those trusts which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking,—trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations.

5. Applying these principles to the instant case, we are of the opinion that the trust constituted an association. The trust was created for the development of a tract of land through the construction and operation of golf courses, club houses, etc. and the conduct of incidental businesses, with broad powers for the purchase, operation and sale of properties. Provision was made for the issue of shares of beneficial interests, with described rights and priorities. There were to be preferred shares of the value of $100 each and common shares of no par value. Thus those who took beneficial interests became shareholders in the common undertaking to be conducted for their profit according to the terms of the arrangement. They were not the less associated in that undertaking because the arrangement vested the management and control in the trustees. And the contemplated development of the tract of land held at the outset, even if other properties were not acquired, involved what was essentially a business enterprise. The arrangement provided for centralized control, continuity, and limited liability, and the analogy to corporate organization was carried still further by the provision for the issue of transferable certificates.

Under the trust, a considerable portion of the property was surveyed and subdivided into lots, which were sold

and, to facilitate the sales, the subdivided property was improved by the construction of streets, sidewalks and curbs. The fact that these sales were made before the beginning of the tax years here in question, and that the remaining property was conveyed to a corporation in exchange for its stock, did not alter the character of the organization. Its character was determined by the terms of the trust instrument. It was not a liquidating trust; it was still an organization for profit, and the profits were still coming in. The powers conferred on the trustees continued and could be exercised for such activities as the instrument authorized.

6. Petitioners contend that the trust was not taxable as an association, by reason of the retroactive provisions of § 704 (a) of the Revenue Act of 1928.[12] The contention is plainly unavailing and does not require an extended discussion. Section 704 (a) of the Act of 1928 provides, in substance, that where a taxpayer filed a return as a trust for a taxable year prior to 1925, the taxpayer shall be taxable as a trust, and not as a corporation, if the taxpayer was considered to be so taxable either (1) under the regulations in force at the time the return was made, or (2) under a departmental ruling then applicable and in force. Prior to the time for filing petitioners' return for the year 1924 the regulations had been amended, following the decision in *Hecht* v. *Malley, supra,* so as to provide that operating trusts in which the trustees were not restricted to the mere collection of funds and their payment to beneficiaries, but were associated together in much the same manner as directors in a corporation for the purpose of carrying on a business enterprise, should be deemed to be associations, regardless of the control exercised by the beneficiaries. Treasury Regulations No. 65, Art. 1504, October, 1924. It does not appear that there

---

[12] 45 Stat. 880.

were regulations or rulings in force, at the time of the return for the taxable year 1924, under which the trust in this instance would be taxable as a trust and not as an association.

The judgment is

*Affirmed.*