## UNITED STATES v. HILL.
### No. 2833.

Circuit Court of Appeals, Tenth Circuit.
May 13, 1944.

Louise Foster, of Washington, D. C., (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson and Leon F. Cooper, Sp. Assts. to the Atty. Gen., and George H. West, U. S. Atty., of Topeka, Kan., on the brief), for appellant.

Justin D. Bowersock, of Kansas City, Mo. (E. H. Hatcher, of Topeka, Kan., and Bowersock, Fizzell & Rhodes, of Kansas City, Mo., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal involves income taxes for the years 1936, 1937 and 1938. The question is whether the appellee is an "association" within the meaning of Section 1001 (a) (2) of the Act of 1936 and Section 901 (a) (2) of the Revenue Act of 1938, 26 U.S.C.A.Int.Rev.Code, § 3797(a) (3).

The Lawrence Paper Manufacturing Company was a co-partnership consisting of Irving Hill, Paul A. Dinsmoor, Hortense B. Hill, Mary B. Dinsmoor, and the Mary G. Bowersock Trust. It was engaged in manufacturing paper products. The assets of the co-partnership consisted of the usual operating assets of such a business, and municipal, government and industrial bonds and stocks, valued in excess of $400,000. On August 1, 1931, the partners incorporated the business, transferred the operating assets to the corporation, and transferred the remaining assets to the Dinsmoor Trust, which they created for the purpose of holding and administering the assets under the provisions of the trust agreement.

Irving Hill and Paul A. Dinsmoor were named as trustees. The trust agreement recited the formation of the corporation and the intent to dissolve the co-partnership, and the desire to provide for the liquidation and ultimate disposition and distribution of the assets not transferred to the corporation.

The trust agreement provided that the trustees should have full powers "to invest and reinvest the joint funds in accordance with their best judgment, without being restricted to any class or classes of investments usually designated as legal invest-

ments for trustees and may in their discretion retain any securities or assets in which such fund or any part thereof may be now invested; to buy, acquire, sell and otherwise dispose of and deal with the joint funds and any part thereof, and any and all funds at any time coming within the terms hereof, at their sole discretion; * * *"

The agreement also provided that as long as the stock ownership of the Lawrence Paper Company remained in the original partners and beneficiaries under the trust, the trustees were authorized to "lend to said Lawrence Paper Company, on such terms as the trustees may determine, any and all of the joint funds from time to time, and may also make such contributions out of the joint funds as they may deem advisable to the capital structure of said corporation from time to time, such contributions being regarded for the purpose of this agreement as distributions to the undersigned of the amounts so contributed." The trust was subsequently amended and extended for an additional five year period. The amendment authorized the trustees to purchase bonds of the corporation and provided that they might contribute to the capital structure of the corporation proportionately with all other common stockholders.

■■ The decisive principles of law are stated in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 295, 80 L.Ed. 263. The court there clearly pointed out the distinction between traditional trusts and business trusts, and laid down the rule that business trusts were associations within the meaning of the act when they had certain identifiable indices which made them analogous to corporations. Somewhat in the nature of a definition, the court said:

"In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains."

Prior to the formation of the corporation, the co-partners were engaged in business. The assets of this business consisted of these stocks and bonds and the operating assets of the paper mill company. No doubt these liquid assets were as much a part of the business as were the operating assets and were used to provide credit for the operation of the paper mill. Aft-

er the formation of the corporation, all of the assets were employed in exactly the same way, the only difference being that the operating assets were operated by the corporation and the liquid assets by the trust.

■ The trust agreement gave the trustees the greatest latitude possible in the operation of the trust property. It empowered them to "invest and re-invest the joint funds * * * to buy, acquire, sell and otherwise dispose of and deal with the joint funds and any part thereof, and any and all funds at any time coming within the terms thereof, at their sole discretion, * * *." These broad powers stamped the trust as a business trust. The character of the association is determined from the instrument. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 56 S.Ct. 285, 80 L.Ed. 278. However, here there is ample evidence that the trustees did engage in the business of buying and selling securities for profit. The record is replete with such transactions. They employed and paid for the services of the Standard Statistics Company, Inc., a New York firm of investment experts. On numerous occasions stocks were sold on its advice for the purpose of taking a profit. In addition to all this, the trustees were directed to make loans to the corporation, endorse its notes, and even transfer some of the assets to the corporation. All this is foreign to a liquidating trust.

We fail to see any resemblance in this trust to the traditional trust discussed in the Morrissey case. True, the trust instrument states its purpose to be the liquidation and ultimate distribution of these assets, but a careful analysis of the entire instrument establishes beyond a doubt that such was not its real purpose. These assets were liquid. They could have been distributed in kind very readily to the co-partners. There is no provision in the trust which requires that they be converted into cash before distribution is made. In fact, it appears quite evident that distribution in kind was contemplated. The object of the trust was not to hold and conserve particular property with incidental powers. Its purpose was to hold and employ this property for the benefit of the corporation and during such period operate and manage it for profit and gain. All of this is foreign to the traditional trust as pointed out in the Morrissey case. The elements which make a business trust analogous to a cor-

624

poration as laid down in the Morrissey case are present here. We conclude that the trust is an "association" within the meaning of the applicable revenue act..

Reversed and remanded for further proceedings in accordance with the views expressed in this opinion.