## NATIONAL METROPOLITAN BANK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5258.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1944.

Otis Beall Kent, of Washington, D. C. (Earl Whittier Shinn and Joseph K. Moyer, both of Washington, D. C., on the brief), for petitioner.

Louise Foster, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On this appeal, we are asked by the National Metropolitan Bank, surviving trustee of the Walter Brownley Trust (hereinafter called petitioner) to review and reverse a decision of the Tax Court of the United States, determining income taxes due by petitioner for the taxable years 1937 to 1939, inclusive.

The facts, about which there is little dispute, in spite of their complicated nature, were set out in detail in the opinion of the Tax Court. We adopt the facts, as found by the Tax Court, since we think they are amply supported by substantial evidence, and certainly are not clearly erroneous in any aspect.

For our purposes, these facts may be thus briefly summarized:

Walter Brownley, who had amassed a substantial estate, chiefly in the candy business, executed on the same day in 1923, a will leaving all of his property to his wife, Emma Brownley, and a trust agreement which was utterly inconsistent with the will. After his death, a number of conferences were held between Emma Brownley and the beneficiaries under the trust agreement of 1923. On September 4, 1930, an agreement was finally reached between these parties which, in effect, set aside both the provisions of the will and the trust agreement of 1923. This agreement resulted in the admission of the will to probate and the appointment of the parties named therein as executors; the renunciation by Emma Brownley to take under the will; the setting aside by court action of the trust instrument executed by Walter Brownley in 1923, and the distribution and transfer of the assets of the estate as follows: to Emma Brownley, one-half; to Carrie Bailey, one-sixth; and to Edward R. Brownley and William C. Brownley, one-sixth each. This agreement also provided that after the distribution of the assets, the distributees would enter into a trust agreement containing certain charitable features and would re-transfer the assets to the executors under the will, in the capacity of trustees.

On October 29, 1931, the Walter Brownley estate was distributed in individual shares according to the terms of the agreement of September 4, 1930. On the same day, after this distribution and pursuant to this agreement, the trust indenture with which we are now concerned was entered into. Under this trust indenture, it was provided that the trustees should manage the candy business and very broad powers of investment, re-investment and re-sale, as to both personalty and realty, were given to the trustees. It was further provided that in their conduct of the candy business, the trustees should, with certain restrictions, employ Leesnitzer as manager and Edward R. Brownley as assistant manager, during their respective lives. Provision was also made as to their annual salaries. It was also provided that out of the income from the candy business a salary of $2,500 a year should be paid to Emma Brownley as long as she might live and elect to perform substantial services in connection with the business.

It was provided in the indenture that the income arising from the candy business and other property of the trust, after payment of incidental expenses and repairs, should be applied by the trustees as follows: (1) to the payment of current taxes; (2) to the payment of trustees' commissions; (3) to the payment of certain mortgage interest and other indebtedness; (4) to the establishment of a sinking fund for retirement of trust indebtedness; (5) to the establishment of a certain contingent reserve;

(6) to the distribution of the remaining income in quarterly installments in specified proportions to Emma Brownley, Carrie Bailey, William C. Brownley and Edward R. Brownley.

It was further provided that this distribution of the income should continue for a period of not less than twenty years from the date of the agreement and thereafter until the death of the last surviving grantor, if any of these should survive the 20-year period. Each of the grantors was given the right to bequeath or assign the income due to him or her.

Upon the death of the last surviving grantor, or the expiration of the 20-year period, whichever should be later, these distributions of income were to cease, and not less than 50% of the income was to be accumulated and applied to the construction of a building to be known as the Brownley building. The remainder of the net income was to be distributed by the trustees in perpetuity to such public charitable hospitals and such orphan asylums in the District of Columbia as the trustees should deem to be deserving, with the proviso that the trustees might withhold an amount not in excess of 25% of the amount available in any year and might add this to the corpus of the trust estate. Proviso was also made for meetings between the trustees and the grantors twice a year; and a further provision was made for the settlement by arbitration in case of any disagreement between the trustees and the grantors.

The trustees did take over and did operate the candy business, other property was transferred to them and the trustees generally exercised, as occasion arose, the powers and duties conferred on them by the instant trust indenture. Matters of general policy respecting the candy business were determined by the trustees, though the handling of the details involved in this business were left to Leesnitzer and Edward R. Brownley.

The trustees engaged in a number of activities in connection with the real estate. While the trustees held no regular meetings, the record discloses that up to the time of the death of Edward R. Brownley they had met about forty times—an average of four times a year. At these meetings, various matters relating to the candy business, the handling of the real estate and the distribution of the income to the grantors were discussed and decided.

With the possible exception of the first year following the creation of the instant trust, the income from the candy business, even though no rent was paid, was not large enough to result in a profit, after payment in full of the salaries of Leesnitzer, Edward R. Brownley and Emma Brownley in the amounts set out in the trust indenture. It was accordingly necessary to reduce the amounts of these salaries.

■ On these facts only a single question of law is presented: Was the Walter Brownley Trust (here involved) carrying on business during the taxable years, 1937 to 1939, and was it, as such, taxable as a corporation? The Tax Court answered this question in the affirmative. This decision is entitled to due weight in our consideration of the case. Dobson v. Commissioner, 320 U.S. 489, 502, 64 S.Ct. 239.

■ The distinguishing characteristics of a business trust, taxable as a corporation, are thus admirably set out by Chief Justice Hughes in the leading case of Morrissey v. Commissioner, 296 U.S. 344, 359–360, 56 S.Ct. 289, 296, 80 L.Ed. 263:

"What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise, who act 'in much the same manner as directors,' may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and

are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking.

"It is no answer to say that these advantages flow from the very nature of trusts. For the question has arisen because of the use and adaptation of the trust mechanism. The suggestion ignores the postulate that we are considering those trusts which have the distinctive feature of being created to enable the participants to carry on a business and divide the gains which accrue from their common undertaking, trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations."

Petitioner strenuously contends that the trust here involved was not created for business purposes and conducted no business activities. We agree with the Tax Court that this contention is lacking in merit.

■ The purposes of the trust are primarily to be determined by the provisions of the trust indenture. On this point, the Supreme Court, again through Chief Justices Hughes, has spoken quite clearly in Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373–374, 56 S.Ct. 285, 287, 80 L.Ed. 278: "We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the State. The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

■ Not only was it intended that the candy business (and the same is true of other trust activities) be operated as a profitable enterprise, but the general policies, and the broad control of the candy business, were entirely in the hands of the trustees, even though the details of the business were left in the hands of Leesnitzer and Edward Brownley. Viewed as a whole, the picture fits admirably into the background of a business trust as that background is outlined in the Morrissey case. Hardly can it be fairly said that the powers and activities of the trustees here "were confined to the maintenance and conservation of the trust properties and the collection and distribution of the income therefrom." In the instant case, as the opinion of the Tax Court transparently shows, the powers and activities of the trustees ranged far beyond such narrow confines.

We are not impressed by the contention that here (for the purposes of taxation) is a charitable rather than a business trust. There are unquestioned similarities between the charitable provisions in the trust instrument executed by Walter Brownley and the instant trust indenture, but it is equally true (as the Tax Court pointed out) that, as to their charitable provisions, the two instruments manifest also wide differences.

The instant trust indenture clearly provides for an ultimate distribution to charities of the trust property, but only after the lapse of the period set out in the trust indenture. But this indenture, with crystal clearness, provides for the operation of a business for the benefit of the grantors during the life time of these grantors and for a period of at least twenty years. We, therefore, must hold that for this period (which includes the taxable years in question) this trust must be treated and taxed as a business trust.

Nor is it entirely without importance (in both the business and charitable aspects here involved) that there was evidence that the trust provisions relating to the employment of Leesnitzer and Edward Brownley were founded on a definite consideration. This consideration was the composition of claims of these two men against the estate of Walter Brownley, based on bonuses promised by Walter Brownley but never paid.

The record does not substantiate the claim that the creators of this trust acted

under any real coercion. They did face an embarrassing legal predicament, due to the utter inconsistencies between the provisions of the original Brownley trust instrument of September 7, 1923, and the will of Walter Brownley. Hardly could it be said, though, that they were coerced into executing the trust agreement (here involved) of October 29, 1931. They acted quite voluntarily. And it would be an exaggerated euphemism to state that self-interest was in any way conspicuous by its absence.

Finally, we agree with the Tax Court that the cases cited by the petitioner may be readily distinguished on the facts.

The decision of the Tax Court is affirmed.

Affirmed.