### TITUS v. UNITED STATES.
### No. 3104.

Circuit Court of Appeals, Tenth Circuit.
June 26, 1945.

Rehearing Denied July 24, 1945.

Robert Ash, of Washington, D. C. (Ray S. Fellows, of Tulsa, Okl., and W. T. Durant, of Washington, D. C., on the brief), for appellant.

John F. Costelloe, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., and Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

C. W. Titus, the appellant, as an individual, filed suit to recover alleged overpayment of taxes for the years 1939 and 1940. The taxes in question were paid by the C. W. Titus Company, a trust, upon corporate tax form returns. Judgment was entered for the government, and Titus has appealed.

There is no conflict in the evidence. C. W. Titus organized C. W. Titus, Inc., a corporation, in 1926, and transferred all his oil producing and other properties to it. Of the 3,000 shares of the corporation, 2,998 were issued to him, one share was issued to his wife, and one share was issued to his sister. These last two shares were issued as qualifying shares, but were never removed from the stock books of the corporation. Later, in 1926, the corporation sold all its oil and gas properties and invested more than $1,500,000 of the proceeds in stocks and bonds. The business of the corporation was continued until December 31, 1927, at which time the three stockholders by written agreement created a trust under the name of C. W. Titus Company. The next day the entire stock of the corporation was transferred to the trust. During 1928, 2,850 shares of the stock were transferred back to the corporation in exchange for certain of its assets. In 1931 the trustee transferred the balance of the stock to the corporation in exchange for the balance of its assets, and the corporation was then dissolved. No taxable gain was reported by either the trust or the appellant at the time of the surrender of the corporate stock for the corporate assets. On the contrary, the trust and the corporation filed consolidated or joint tax returns until the corporation was dissolved. Thereafter, and including the years in question, appellant filed his individual income tax returns and the trust filed a corporate tax return as an association, under Section 3797 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797.

The grounds upon which appellant sought to recover are that since he was the sole owner of both the corpus and the income of the trust assets, and as trustee was in absolute control of the management of the assets of the trust, without accountability to anyone, the trust therefore was not a separate taxable entity under the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and that therefore the income attributable to the trust should have been included in his personal income tax liability for the years in question. It is urged that the government was not misled to its detriment by the corporate tax

returns of the trust, because it at all times had access to its books and knew its true status.

Was the trust an association within the meaning of the applicable provisions of the Revenue Act? The trust instrument was executed by Titus, his wife, and his sister. The life of the trust was fixed at 21 years. Titus was named sole trustee for life, with absolute power to conduct the affairs of the trust. The trust instrument provided that the trustee should have power and authority to conduct the business of the trust and to buy, sell, exchange, pledge, mortgage and generally deal in stocks and other securities, to carry on the business of investing and dealing in stocks, bonds and other securities; to take, purchase or otherwise acquire, own, hold, sell, exchange, hire, lease, pledge, mortgage and otherwise deal in real estate, personal property, chattels, chattels real and choses in action; to acquire, own, mortgage, sell, lease or otherwise dispose of lands containing oil, gas or other minerals, oil wells, gas wells and oil royalties, and manage and develop such properties; to purchase, hold, sell, assign, transfer, mortgage or otherwise dispose of the capital stock or evidences of indebtedness issued by corporations; to enter into contracts of every kind and nature, execute promissory notes, bonds, debentures or other negotiable or transferable instruments; to make and adopt by-laws, rules and regulations, to establish and maintain offices, select a manager or managers, appoint agents, officers, committees and boards to conduct and promote the business of the trust, and to declare and pay dividends from time to time. The instrument further provided for the issuance of capital stock of no par value, and for the issuance of stockholders' certificates of beneficial interests which were transferable on the books of the trust.

The instrument provided that the 300,000 authorized shares should be issued to Titus, his wife, and his sister; that the trustee might increase the authorized capital stock from time to time and issue and dispose of such increase from time to time as he saw fit; that the trustee might pay dividends to certificate holders of record without being under obligation to look beyond the record to ascertain the rights of any claimed assignees. It provided that the shareholders had no right or title to the trust property; that they could not call for partition or call for a dissolution of the trust; that the death of a beneficiary did not dissolve the trust. It absolved the certificate holders from personal liability, and provided that creditors could look only to trust assets for satisfaction of their claims.

Under the trust agreement Titus was under no obligation to declare dividends. If dividends were declared "the amount of such dividends and the times of declaration and payment thereof shall be wholly in the discretion of the trustee, as also the determination of what constitutes such net profits or surplus."

It is urged that the trust was in fact the alter ego of Titus; that the assets, both before and after the creation of the trust, were in effect his sole property and that he alone enjoyed the full economic benefit of the income which was reported for the trust on corporate tax form returns, and that therefore the income of the trust should be charged to him, together with his other personal income.

The contention made by Titus in this case is a most unusual one. Ordinarily the taxpayer is in court contending that the trust which he created is a pure or traditional trust divesting him of his interest in the property and that the income thereof is attributable to the named beneficiaries. This is the first time a taxpayer has appeared before this court contending that a trust which he created is a nullity; that it has no substance; and is but an empty shell, and asking this court to disavow his offspring and deposit the fruit thereof under his tree.

Taxpayers will not be judged, however, by what they say but by what they have done. Whether the trust in question is an association within the meaning of Section 3797 of the Revenue Code is to be determined from the four corners of the instrument itself. When so considered, we have no difficulty in concluding that the trust instrument created an association such as contemplated by Section 3797. As has been stated repeatedly, the inclusion of associations with corporations for tax purposes implies resemblance and not identity. Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Commissioner v. Nebo Oil Co., Trust, 10 Cir., 126 F.2d 148; Commissioner v. City National Bank & Trust Co., 10 Cir., 142 F.2d 771.

An analysis of the instrument in question leads to the conclusion that the test laid down in these cases has been met.

The trust has centralized management, continuity of existence during the period of the term, uninterrupted by the death of any of the members, limitation of personal liability, and means of transfer of beneficial interests. Neither is it correct to say, as asserted by Titus, that there are no associates. True, there were only three at its inception, Titus, his wife, and his sister. It is also true that his wife and his sister each had only one of the 300,000 trust shares and that he owned all the rest, but that one share gave them an interest in the corpus of the estate and entitled them to a share in the profits. Furthermore, the declaration of trust contemplates further and additional shareholders. It provides for the issuance and sale of additional units by the trustee. It provides that all future shareholders shall be bound by the provisions of the trust agreement. The trust certainly contemplates carrying on business. It provides for this in the broadest possible terms. In fact, the instrument meets all the requirements to make the trust an association within the meaning of the applicable provisions of the Revenue Act.

But we are asked to disregard the clear, express provisions of the trust agreement and look to the actualities of the situation. In substance, it is argued that when thus viewed it becomes apparent that not only was Titus the king-bee, but also that he was the only bee in this hive. Parties are not at liberty to say that their purpose in perfecting an organization was different or narrower than that which they formally set forth in their solemn instrument of writing. Helvering v. Coleman-Gilbert, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Commissioner v. City National Bank & Trust Co., supra.

For all practical purposes, Titus was the sole owner of this business. He, however, purposely chose a form other than his personal efforts by which to carry on his business. He first created a corporation under the laws of Oklahoma, consisting of himself, his wife and his sister. The interest of the wife and sister in the corporation was limited to one share each, and even that was not issued to them. They were members of the corporation apparently for the sole purpose of making possible its formation under Oklahoma law. The validity of the corporation was not, however, affected by the fact that they were only nominal stockholders, without any real voice in its affairs. Shortly thereafter Titus decided to discard the corporation as a medium through which to carry on his business, and determined to carry on his business through an association similar to a corporation. For this purpose he formed the trust in question. To make it effective, it was necessary to have associates. For this purpose he gave his wife and sister only a nominal interest in the association, the same as they had had in the corporation. If this arrangement was effective to create a corporation it is difficult to see why it would not constitute an association in the nature of a corporation, all other elements necessary to make such an association being present.

Whether the government could challenge the nature of the trust is quite a different question. That matter is not before us. Titus himself cannot do so. He set up a trust by written instrument which meets all the tests of an association in the nature of a corporation. He carried on his business thereby, he filed corporate income tax returns for years, and he will not now at his behest be heard to say that the association was other than what he said it was in his written instrument.

As was said by the Supreme Court in Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 358, 84 L.Ed. 406, the government cannot be compelled to acquiesce in the selection by a taxpayer of a form for carrying on his business which is most advantageous to him. It may look to actualities, and upon determining that the form employed is clearly all a sham, may sustain or disregard the effects of the fiction as best serves the purpose of the tax statute. In the absence of such action by the government, the taxpayer, however, "is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages." This is precisely what Titus did. He deliberately created a trust by written instrument which meets all the tests of an association in the nature of a corporation. He carried on his business thereunder, filed corporate income tax returns for years, which were accepted by the government, and he himself will not now be heard to say that the association is other than what he made it by his solemn instrument of writing.

Affirmed.