John I. COOPER, H. W. Price, L. W. Price, June Price Danglade, Doris Lee Tammany, Clara May Edwards, John M. Green, and True W. Childs Trust, H. W. Price, Trustee, and L. W. Price, Successor Trustee to John I. Cooper, Deceased Trustee, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 5940.

United States Court of Appeals Tenth Circuit.

Nov. 28, 1958.

Rehearing Denied Dec. 29, 1958.

Certiorari Denied March 23, 1959.

See 79 S.Ct. 724.

R. L. Letton, Pittsburg, Kan., for petitioners.

James P. Turner, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for respondent.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Tax Court. The petitioners are the John I. Cooper, H. W. Price and others Trust [1] and H. W. Price and L. W. Price, trustees of such taxpayer trust. Deficiencies for the years 1950 to 1953, inclusive, are involved. The taxpayer trust filed fiduciary income tax returns for estates and trusts for such years. The Commissioner determined deficiencies on the ground that the taxpayer trust was analogous to a corporate organization and therefore taxable as an association under § 3797(a) (3) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 3797(a) (3). The Tax Court sustained the determinations of the Commissioner.

The John M. Cooper Trust,[2] a testamentary trust, was created in 1914 by the will of John M. Cooper, ancestor of the beneficiaries of the taxpayer trust. The testamentary trust included all of the testator's residuary estate and provided for distribution of the corpus at the end of its term of 35 years, in equal shares to the testator's children then living, and the heirs of each of his deceased children. At the end of the 35-year term, on October 19, 1949, the assets of the testamentary trust, consisting of cash, real estate, 315 shares, constituting a controlling interest, of the Baxter State Bank and United States Series G Bonds were distributed. Such assets had an aggregate value of $355,323. The instrument creating the taxpayer trust was ex-ecuted on October 19, 1949, by the beneficiaries of the testamentary trust and their wives and conveyed to two of the beneficiaries, John I. Cooper and H. W. Price, as trustees, all the assets of the testamentary trust, except the cash and Series G Bonds.

The taxpayer trust instrument recited that the property described therein had "an income producing potential" which could "be better protected by a unified control, management and operation * * * until such time as the trustees" of the taxpayer trust "or their successors," in the exercise of the discretionary powers conferred upon them should "sell and convert into cash" the assets of the trust "for distribution among the grantors herein, their heirs or assigns."

The term of the trust was fixed at 10 years. The trust instrument conferred on the trustees broad powers and duties which were enumerated in part as follows:

"1. Said trustees, or their successors, shall have the full and complete management and control of all of said property, real and personal, with power to lease and rent the same, collect the rents therefrom, and with power in said trustees to sell and dispose of the whole or any part or parts of said trust estate, either together or in parcels and either for cash, or upon terms as to said trustees may seem proper, and with power to lease said real estate of any part thereof for mining purposes or otherwise, for the term or period not to exceed ten years from the date of said lease, whether or not said lease period or term shall or may extend beyond the fixed term of this trust, and collect the rentals or royalties therefrom, to execute and deliver all deeds, leases, contracts and other instruments necessary and proper to carry out the purposes of this trust, and with power to borrow money, pledge or mortgage said property or any part thereof if and

---

1. Hereinafter called the taxpayer trust.

2. Hereinafter called the testamentary trust.

when in the discretion of said trustees the same may be necessary to obtain funds to carry out the purposes of this indenture, and the power to invest the funds of said trust in real or personal property only and whenever in the judgment of said trustees said investments shall be necessary and proper to protect and preserve the trust estate or part thereof, or the potential income therefrom. It is the intention of the grantors herein to invest said trustees the full and complete discretionary power in the management, control, liquidation and distribution of the trust estate hereby created."

The trustees were required to keep books and records; to make such books and records available to the beneficiaries at all reasonable hours; and to furnish the beneficiaries with an annual balance sheet statement of their operations.

The trust agreement further provided:

"The main purpose of this trust is to provide for an economical and centralized management and operation of the property of this trust, until the liquidation and distribution of said trust property has been completed as herein contemplated by the trustees for the benefit of the beneficiaries; the holding together all of said property, and the various parts thereof, so that the maximum return may be received therefrom either from rentals or royalties, or from the sale of all or any part thereof, during the term hereof as, in the discretion of said trustees, shall be for the best interests of the beneficiaries; to vest in the trustees full power and authority in all things to carry out the purposes and intention hereof as said trustees in their discretion, may find and determine to be for the best interest of the trust and beneficiaries thereunder, retaining in the grantors, their heirs and assigns the right to have and receive their proportionate share of the distribution of income or corpus as and when made by the trus-

tees, and in the event liquidation and distribution has not been made of all of the corpus of said trust estate at the end of said ten year period, to have and receive from said trustees upon the expiration of the fixed term hereof, their proportionate part and share of such remaining assets and property of the trust, either in kind or in cash."

The trust agreement required quarterly distributions of $2,000, to be apportioned among the beneficiaries, and further provided that such distributions should be increased "if in the judgment of the trustees, income from said trust operations, proceeds from the sale or encumbrance of part or parts of the corpus of said trust, are available for distribution and in the discretionary judgment of the trustees, such additional funds can be distributed without impairing the continued normal and economical administration of the trust."

The trust instrument empowered the trustees to make distribution in kind of any part or parcel of the trust estate.

The trust agreement further provided that in the event of death of any beneficiary all the beneficial share of such deceased beneficiary should be paid to his heirs, executors, administrators, devisees or trustees.

It further provided that the interests of the beneficiaries should be transferable, but that before a transfer should be made the remaining beneficiaries should first be given the option and should have the right to acquire such beneficial interest for a period of 30 days.

Provision was made for successive trustees in the event of the death or resignation of a trustee.

John I. Cooper, one of the original trustees, died in 1951 and was succeeded by L. W. Price. Certain of the original beneficiaries have died since the creation of the taxpayer trust and have been succeeded by their heirs or assigns.

The real estate transferred to the taxpayer trust consisted primarily of farm lands. One 80-acre tract was strictly

mining land and a 600-acre tract also contained some mineral deposits. Both of such tracts were under mineral leases from the testamentary trust on October 19, 1949. At the expiration of these leases the trustees of the taxpayer trust executed new leases on each tract. One lease was for a period of 10 years from January 16, 1953, and extended the lease well beyond the original terms of the trust.

Since October 19, 1949, the trustees of the taxpayer trust have rented the farm lands conveyed to such trust on a share-crop basis, receiving one-third of the crop grown as rental.

On October 29, 1951, the taxpayer trust sold approximately 336 acres of its realty for a total consideration of $23,-448.45, realizing a gain from such sale of $4,686.40. The taxpayer trust sold another tract in March, 1952, with a resulting loss of $4,600.

The 315 shares of stock of the Baxter State Bank represented a controlling interest in the bank. Several small sales for the purpose of qualifying certain persons as directors or officers of the bank were made between January 10, 1950, and January 3, 1952. Other sales were made to "valued customers." Such sales were not sufficient to deprive the taxpayer trust of a controlling interest in the bank. The taxpayer trust realized approximately $9,000 gain from such sales of stock.

The value of the trust assets, the yearly net gains, the amounts distributed to beneficiaries and cash on hand at the close of each taxable year were as follows:

| | Asset Value per books as of December 31 | Net Gain | Distributions to beneficiaries | Cash on hand at end of taxable year |
|---|---|---|---|---|
| 1949 | $161,160.99 | | | |
| 1950 | 159,813.01 | $55,652.02 | $57,000 | $ 3,999.48 |
| 1951 | 179,318.71 | 91,505.70 | 72,000 | 43,324.39 |
| 1952 | 203,140.69 | 71,821.98 | 48,000 | 75,892.97 |
| 1953 | 203,002.28 | 47,861.59 | 48,000 | 68,599.02 |

The tax court found that the taxpayer trust was created for the purpose of carrying on a business enterprise and was, during each of the years in question, an association, taxable as a corporation.

Section 3797(a) (3) of the Internal Revenue Code of 1939 defines the term "corporation" as including associations and the applicable Treasury Regulations [3] declare that the term "association" includes " * * * any organization, created for the transaction of designated affairs, or the attainment of some object, which, like a corporation, continues notwithstanding that its members or participants change, and the affairs of which, like corporate affairs, are conducted by a single individual, a committee, a board, or some other group, acting in a representative capacity. It is immaterial whether such organization is created by an agreement, a declaration of trust, a statute, or otherwise. * * * "

This court, in Hamilton Depositors Corporation v. Nicholas, 10 Cir., 111 F.2d 385, 387, said that the attributes of such an association, under the decision of the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, were:

3. Regulations 111, § 29.3797–1, § 29.3797–2, and § 29.3797–3, are applicable to the taxable years 1950 and 1951. Regulations 118, § 39.3797–1, § 39.3797–2, and § 39.3797–3, apply to the taxable years 1952 and 1953, but are in substantial conformity to the earlier ones.

"1. A continuing entity throughout the trust period;

"2. Centralized management;

"3. Continuity of the trust, uninterrupted by death among the beneficial owners;

"4. Means for transfer of beneficial interests;

"5. Limitation of personal liability of participants to property embarked in the undertaking."[4]

In Morrissey v. Commissioner, 296 U. S. 344, 357, 56 S.Ct. 289, 295, 80 L.Ed. 263, the court said:

"4. The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity. The resemblance points to features distinguishing associations from partnerships as well as from ordinary trusts."

The absence of a single indicium, such as failure to limit personal liability of participants to property embarked in the undertaking, does not prevent a trust from being taxed as an association, if other indicia bring it within the terms of the statute and regulations.[5]

■ Here, each of the first four of the enumerated indicia of an association, set forth by this court in Hamilton Depositors Corporation v. Nicholas, supra, were present. The taxpayer trust is a continuing entity, since the instrument grants power to a surviving trustee to appoint a successor from among the beneficiaries, with the approval of a majority in interest, and failing that it provides for the appointment of a successor trustee by the probate court. The express purpose of the trust was to secure unified control, management and operation of the taxpayer trust properties by the trustees. Among the broad powers of centralized management were "full power and authority in all things to carry out the purposes and intention hereof as said trustees in their discretion may find and determine to be for the best interest of the trust and beneficiaries thereunder," and "full and complete management and control of all of said property, real and personal, * * *." The continuity of the taxpayer trust was not to be interrupted by the death of any of the beneficial owners. Some beneficiaries died during the life of the taxpayer trust, without in anywise impairing its operation. The trust agreement provided for a means to transfer beneficial interests with the provision that a beneficiary desiring to transfer his interest should first give the other beneficiaries an opportunity to purchase his share.

Neither under the provisions of the trust instrument, nor as the taxpayer trust was actually operated by the trustees, was orderly liquidation, rather than business activity, the primary purpose of the trust. Complete distribution of net earnings was not required and was not, in fact, made in two of the years in question. Undistributed cash in the hands of the trustees at the end of the taxable year 1950 was $3,999.48 and at the end of the taxable year 1953, was $68,599.02. The only liquidation of corpus effected during the taxable years in question was the sale of a few shares of bank stock and a portion of the farm lands. Clearly, the purpose of the taxpayer trust was the operation of the property conveyed to it through centralized management for the purpose of maintaining control of the Baxter State Bank and the realization of gain and profit through the carrying on of business activities. Nothing in the trust agreement or in the acts of the trustees indicated a planned or compulsory liquidation. As a matter of fact, liquidation was not required, attempted, or achieved. Large profits were made through business activities. Earnings were received from crop rentals, mineral royalties and dividends.

4. See also: Commissioner of Internal Revenue v. City National Bank & Trust Co., 10 Cir., 142 F.2d 771 and United States v. Hill, 10 Cir., 142 F.2d 622.

5. Fletcher v. Clark, 10 Cir., 150 F.2d 239, 241, 166 A.L.R. 1456.

Important factual differences clearly distinguish the instant case from the family trust cases, such as Commissioner of Internal Revenue v. Guitar Trust Estate, 5 Cir., 72 F.2d 544; Paine v. United States, D.C.Mass., 32 F.Supp. 672; and Williams v. Commissioner, decided June 19, 1944 (1944 P-H-T-C Memorandum Decisions, Par. 44, 216).

Moreover, family trusts, if they have the requisite characteristics, may be classed and taxed as associations.[6]

Accordingly, we conclude that the trust was taxable as an association.

Affirmed.

---

6. National Metropolitan Bank v. Commissioner, 4 Cir., 145 F.2d 649; Commissioner of Internal Revenue v. Vandegrift Realty & Investment Co., 9 Cir., 82 F. 2d 387; Titus v. United States, 10 Cir., 150 F.2d 508, 162 A.L.R. 991.